KOEPSELL'S OLDE POPCORN WAGONS, INC. and Dennis Koepsell, Plaintiffs-Appellants,

v.

KOEPSELL'S FESTIVAL POPCORN WAGONS, LTD. and James Kocovsky, Defendants-Respondents.

Court of Appeals

*No. 03–0773. Oral argument March 25, 2004.—Decided June 16, 2004.*

2004 WI App 129

(Also reported in 685 N.W.2d 853.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert B. Moodie* and *Lori J. Fabian* of *Hippenmeyer, Reilly, Moodie & Blum, S.C.,* Waukesha. There was oral argument by *Robert B. Moodie* and *Lori J. Fabian.*

On behalf of the defendants-respondents, the cause was submitted on the brief of *Nicholas C. Zales* of *Zales Law Office*, Milwaukee. There was oral argument by *Nicholas C. Zales.*

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J. Koepsell's Olde Popcorn Wagons, Inc. and Dennis Koepsell (collectively "Koeps-

ell") appeal from a decision granting summary judgment to Koepsell's Festival Popcorn Wagons, Ltd. and James Kocovsky (collectively "Kocovsky"), dismissing Koepsell's breach of contract claim, declaring that Kocovsky is the owner of the trademark, and finding that the breach of contract action was frivolous. We affirm the trial court's dismissal of the breach of contract claim. However, because there are material issues of fact with regard to ownership of the Koepsell trademark, we reverse and remand the trademark issue to the trial court. In addition, we reverse the trial court's finding that the breach of contract claim was frivolous, and direct the court on remand to clarify which statutory criteria were present for its finding. If this is done, the frivolous finding shall be reinstated.

## Standards of Review

¶ 2. This court reviews summary judgment decisions de novo, applying the same method employed by the trial court. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). That method is well established and need not be repeated here. *See, e.g., id.* at 372–73.

¶ 3. A claim is frivolous if there is no reasonable basis in law or equity or if it is commenced solely for the purposes of harassing or maliciously injuring another. WIS. STAT. § 814.025(3) (2001–02).[1] A determination that a claim was frivolous presents a mixed question of fact and law. *Stern v. Thompson & Coates, Ltd.*, 185

---

[1] WISCONSIN STAT. § 814.025(1) provides: "If an action or special proceeding commenced or continued by a plaintiff . . . is found, at any time during the proceedings or upon judgment, to

Wis. 2d 220, 236, 517 N.W.2d 658 (1994). We will review the trial court's factual findings regarding what occurred under the clearly erroneous standard but will independently consider whether those facts fulfill the legal standard. *Id.*

¶ 4. Under WIS. STAT. § 814.025(3), the trial judge is not allowed to conclude frivolousness or lack of it without findings stating which statutory criteria were present, harassment, intent to maliciously injure, or knowledge or imputed knowledge that there was not any reasonable basis in law or equity for the position taken. *Sommer v. Carr*, 99 Wis. 2d 789, 792, 299 N.W.2d 856 (1981).

¶ 5. The inquiry under WIS. STAT. § 814.025(3)(b) is an objective one, focusing on what a reasonable attorney or party should have known. *Stern*, 185 Wis. 2d at 241. Even though a party may have conducted a reasonable inquiry into the law or facts before filing an action given the time limits or other constraints, under § 814.025 there is a continuing obligation to ensure the action is well grounded in fact and law. *Jandrt v. Jerome Foods, Inc.*, 227 Wis. 2d 531, 563, 597 N.W.2d 744 (1999). Once a party or attorney knows or should have known that a claim is not supported by fact or law, it must dismiss or risk sanctions. *See id.*

¶ 6. We review a trial court's decision on a motion for reconsideration under the erroneous exercise of

be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees."

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

discretion standard. *State v. Alonzo R.*, 230 Wis. 2d 17, 21, 601 N.W.2d 328 (Ct. App. 1999).

## DISCUSSION

¶ 7. Koepsell owns Koepsell's Olde Popcorn Wagons, Inc. and Kocovsky owns Koepsell's Festival Popcorn Wagons, Ltd. Since 1993, Koepsell and Kocovsky have entered into multiple asset purchase agreements. The first agreement, in 1993, stated that Koepsell (the seller) owned five popcorn wagons, which, by agreement with Summerfest/Milwaukee World Festival Inc., were located on the Summerfest grounds in Milwaukee, Wisconsin, and Kocovsky (the buyer) would purchase from the seller the five wagons for $100,000. It declared that buyer agreed to pay seller a total of $61,500 in periodic payments, which would constitute an ordinary business expense to buyer and be taxable income to seller. The agreement contained a provision stating: "Quality Of Popcorn: Buyer will sell only the best quality white popcorn, the specifications of which shall be determined by Seller."

¶ 8. The April 1997 and June 1997 agreements were virtually identical except for the purchase price that was listed on the agreement. They both stated that seller (Koepsell) agreed to allow buyer (Kocovsky) the ability to maintain and continue contracts with the following festivals in the Milwaukee metropolitan area: Riversplash, Lakefront Festival of the Arts, Circus Parade grounds, Riverfest, Maritime, and Harvest Fair. The "Purchase Price" clause in each stated: "The purchase price for the goodwill as developed from past years of maintaining contracts of these festivals shall be [$42,000 for the April 1997 agreement and $40,000 for the June 1997 agreement]." Both agreements contained

a provision stating: "Quality of Popcorn. Buyer will sell only the best quality white popcorn, the specifications of which shall be determined by Seller."

¶ 9. The 1999 agreement stated that, in exchange for paying Koepsell $8000 per year, Kocovsky could manage and operate "the Wisconsin State Fair operation" during the 2000 and 2001 state fair. The agreement contained a provision stating: "Dennis Koepsell has the right to specify the type and brand of popcorn to be used during this time period."

¶ 10. On July 11, 2001, Koepsell brought two causes of action against Kocovsky: a breach of contract claim and, in the alternative, a request that the trial court issue a declaratory judgment to clarify the rights of the parties in using the name "Koepsell" and any "logo or other trademark associated therewith as it relates to the sale of popcorn and popcorn related products in the greater Milwaukee area."

¶ 11. **Breach of Contract.** Koepsell's breach of contract claim alleged that Kocovsky breached their asset purchase agreements by using an inferior product, which affected product quality, by not selling the best quality white popcorn product available and by not complying with the specifications, type and brand of popcorn required to be used by Koepsell.

¶ 12. Although the language in the asset purchase agreements differs slightly, the parties agree that their contract included an agreement between the parties that Kocovsky would "sell only the best quality white popcorn, the specifications of which shall be determined by [Koepsell]."

¶ 13. In response to Koepsell's breach of contract claim, Kocovsky submitted a motion for summary judgment on May 5, 2002. His brief in support of his motion complained that, despite discovery requests and inter-

405

rogatories, Koepsell did not provide a description of what constitutes an "inferior product" or what standard was used to judge the popcorn quality; Koepsell did not provide evidence of complaints about the quality of popcorn Kocovsky used; Koepsell did not invoke his right to specify the type or brand of popcorn that was acceptable and, Koepsell had no evidence that Kocovsky's popcorn was of inferior quality. Kocovsky also asked the trial court to find Koepsell's claim to be frivolous under WIS. STAT. § 814.025.

¶ 14. In Koepsell's brief in opposition to Kocovsky's motion for summary judgment, he argued that his own opinion and testimony was all that was required on the quality of popcorn issue to make a prima facie case that Kocovsky breached the agreements by not selling "quality white popcorn."

¶ 15. After this briefing by the parties to the trial court, the court granted Kocovsky's summary judgment motion, reasoning "there has been nothing shown that there was ever a denial by the defendant of the plaintiff's ability to designate or denominate popcorn that was to be used." The trial court went on to say:

> Clearly, under the agreements that were entered into . . . [Kocovsky] agreed to sell only, you know, first quality popcorn through the wagons at the various festivals that they had the right to do and that, essentially, the determination of the quality was to be under the—at the discretion, if you will, of Mr. Koepsell, the plaintiff.
>
> The problem we have here, as I've indicated, there's never—there was never any showing through affidavits or the depositions that were part of—that were made a part of the Summary Judgment Motions that Koepsell, one, denominated specific popcorn to be used and it wasn't being used by [Kocovsky]; that [Koepsell] re-

quested the ability to use specific popcorn—that specific popcorn should be used and that was denied. In fact, there isn't any showing that [Koepsell] at any point in time even requested or made any reference to the kind of popcorn to be used. It simply didn't happen, though certainly that ability—and the right was there as related to [Koepsell], [Koepsell] never exercised it, so on that basis there can be no breach by the defendant under those circumstances.

I would note that [Koepsell] as well has never designated what popcorn should be used, even in answer to interrogatories or deposition, has not designated specifically the kind or type of popcorn to be used.

On that basis I'm satisfied there simply is no breach under those circumstances and will grant [Kocovsky's] motion and dismiss that cause of action.

Koepsell appeals the court's dismissal of his breach of contract claim.

¶ 16. On appeal, Koepsell seems to suggest that the trial court blindsided him by deciding the breach of contract claim "primarily on the basis that nothing had been shown that there was ever a denial by Kocovsky of Koepsell's ability to designate, denominate or request what type of popcorn products should be used as it related to the quality of popcorn issue."

¶ 17. We disagree. After hearing oral argument on appeal and reviewing the record before us, we hold that the quality of popcorn issue was fully litigated. Koepsell claims "the court made its determination based on an issue that was not raised by the parties." However, the parties both exercised their opportunity to brief the trial court and, as discussed above, their briefs do, in

fact, contain arguments on the quality of popcorn issue. Koepsell claims that there is a material issue of fact as to the specification of the popcorn that can be sold; however, he did not file any evidentiary affidavits in opposition to the summary judgment motion to flag a material issue of fact. Furthermore, we perceive no material issue of fact upon our review of the entire record. We are satisfied that Koepsell has failed to state a claim upon which relief can be granted with regard to the breach of contract issue.

¶ 18. **Trademark.** Koepsell's claim in the alternative was a request that the trial court issue a declaratory judgment to clarify the rights of the parties in using the name "Koepsell" in selling popcorn and popcorn related products in the greater Milwaukee area. Attached to Koepsell's complaint were three asset purchase agreement contracts dated 04/02/97, 06/16/97, 10/26/99. Contained in the 04/02/97 and 06/16/97 agreements under the subheading "Purchase Price" is the accord that: "The purchase price for the goodwill as developed from past years of maintaining contracts of these festivals shall be [$42,000 in the 04/02/97 Agreement and $40,000 in the 06/16/97 Agreement]." Also attached to the complaint was a trademark registration certificate from the Wisconsin Secretary of State, dated February 7, 2001.

¶ 19. Kocovsky counterclaimed, requesting a declaratory judgment to state that he, not Koepsell, owned the Koepsell trademark. Attached to his counterclaim was the original 04/22/93 asset purchase agreement.

¶ 20. Then, on May 20, 2002, Kocovsky filed a motion for summary judgment on all issues. Kocovsky argued "goodwill and a trademark/name are the two sides of the same coin. They cannot be separated because as the [Seventh] Circuit ruled in *Green River*

[*Bottling Co. v. Green River Corp.*, 997 F.2d 359, 362 (7th Cir. 1993)], 'the discontinuity would be too great.' " Kocovsky provided several citations which all stand for the general proposition that "[a] trademark cannot be sold 'in gross,' that is, separately from the essential assets used to make the product or service that the trademark identifies." *See, e.g., id.* at 362.

¶ 21. After briefing on the trademark issue,[2] the trial court initially determined that there were material issues of fact and set the matter for a jury trial based on the following reasoning:

> I agree with the case law that, essentially, trademarks and goodwill go hand in hand and you cannot separate them under the circumstances. So if indeed a trademark exists it goes along with the sale of the business and goodwill attributable to that as part of the sale.
>
> . . . .
>
> I just don't have the information based upon what's been presented as to whether or not—If the trademark existed at the time, then it goes to [Kocovsky], and [Kocovsky] was the one who should hold the trademark and have the right to its renewal, not [Koepsell].
>
> If it didn't exist until [the February 7, 2001 trademark registration certificate was issued from the Wisconsin Secretary of State], [Koepsell] may have the ability to hold the trademark but can do nothing to enforce or prohibit and preclude the defendant from use of the name as part of their operation as long as they're otherwise in compliance with the contractual agreements.

---

[2] The record also alludes to a "loss of reputation" claim. This is a claim not mentioned on appeal because later in the record it is revealed that no such claim was made: In a letter to the court, plaintiff's attorney stated he "[did] not believe the Plaintiff ever brought a loss of reputation cause of action against [Kocovsky]."

¶ 22. The court at this time also issued an oral ruling limiting Koepsell "to [his] responses to interrogatories and the information that [he] had already provided as part of the discovery process."

¶ 23. Thereafter, Kocovsky's attorney drew up a proposed order on the motion for summary judgment. In response, Koepsell's attorney wrote a letter to the court expressing his concern regarding the trademark section of the proposed order. He took issue with the part that indicated: if the Koepsell trademark was a renewal or existed prior to 1993 and 1997, then the Koepsell trademark would belong to Kocovsky. Koepsell did not believe the court indicated that the actual trademark would be transferred to Kocovsky, because if that were the case, then Koepsell himself would not have the right or ability to continue to sell product under the "Koepsell" name. Koepsell informed the court that he "would be happy to provide documentation to the court reflecting that the trademark did, in fact, exist prior to 1993."

¶ 24. Kocovsky's attorney responded with a letter to the court stating that the proposed order accurately summarized the court's decision. In addition, he objected to Koepsell's "attempt to introduce new evidence with respect to the trademark." Kocovsky referred to the court's September 3, 2002 oral ruling limiting Koepsell "to [his] responses to interrogatories and the information that [he] had already provided as part of the discovery process." He argued that if Koepsell and his attorney had documents relating to the trademark, it was their obligation to provide them in discovery—before he moved for summary judgment.

¶ 25. The court signed the proposed order over Koepsell's objection. The order was entered on October 22, 2002, and stated that Kocovsky's motion for sum-

mary judgment was granted in part and denied in part. The court dismissed, as already mentioned, the breach of contract claim, limited Koepsell's submission of evidence to the evidence he provided in discovery and on summary judgment, and held:

> If the Koepsell trademark attached to the complaint was a renewal or existed prior to the 1993 and 1997 sales of goodwill from [Koepsell] to [Kocovsky], because the sale of trademarks and goodwill go hand in hand and cannot be separated, the Koepsell trademark would then belong to [Kocovsky].

The court also reserved the right to address the issue of whether all or part of Koepsell's claims are frivolous under WIS. STAT. § 814.025.

¶ 26. Thereafter, on November 27, 2002, Kocovsky filed a motion for judgment on the trademark claim. Kocovsky claimed "[I]t is undisputed the 'Koepsells' popcorn trademark existed before 1993. Accordingly, pursuant to ¶ 5 of the Court's October 2[2], 2002 Order, [Kocovsky] own[s] the trademark."

¶ 27. In reply to Kocovsky's motion for judgment on the trademark claim, Koepsell's attorney sent a letter to the court stating although he disagrees with the court's October 22, 2002 order, "I agree that Judgment can be entered in this case." He then explained his reasoning:

> [I]f the Court agrees and finds [it's statement that] "the Koepsell trademark would then belong to [Kocovsky]" (Court's Order dated October 2[2], 2002) is synonymous with [Kocovsky] being declared the owner[] of the "Koepsells" popcorn trademark, then the Court can enter Judgment as requested [by Kocovsky].

¶ 28. On December 18, 2002, a hearing was held on Kocovsky's motion for summary judgment on the

trademark claim. At the hearing, Koepsell's attorney reiterated the position taken in his letter: that he disagreed with the court's findings and orders but, notwithstanding this, he believed entry of judgment was appropriate.

¶ 29. The trial court granted Kocovsky's motion for a declaratory judgment on the trademark counterclaim on February 3, 2003, in its order for final judgment. It held that Kocovsky is the exclusive owner of the "Koepsell" trademark as registered and dated February 7, 2001. Koepsell appeals this ruling.

¶ 30. On appeal, Koepsell contends that "The Court's decision in regard to naming Kocovsky exclusive owner of the 'Koepsell' Trademark was erroneous as a review of the contracts between the parties does not contemplate such a result, nor was it the intent of the parties." Koepsell claims that he had other aspects of his business, which continued to operate following the original asset purchase agreement in 1993 and the two subsequent asset agreements as entered into with Kocovsky in 1997. "Therefore," he argues, "although the asset agreements in 1997 use the word 'goodwill,' it is not being used in the sense that Kocovsky was purchasing the entire business of Koepsell and the goodwill that the Koepsell business had generated over many, many years." He further argues:

> The "goodwill" referred to in the Asset Agreements in 1997 refers simply to the goodwill Koepsell had developed from previous years in maintaining and continuing the contracts at the designated festivals. Goodwill was for a very limited and specific purpose in the Asset Agreements, and did not include the entire goodwill associated with and generated by the "Koepsell" name, which conducted business in a variety of ways throughout the greater Milwaukee area.

412

¶ 31. Koepsell does not cite any law in his appellate brief to support his trademark argument.

¶ 32. Kocovsky counters Koepsell's argument, contending "[t]he trial court correctly ruled that a trademark and goodwill go hand-in-hand, and cannot be separated and that the sale of goodwill for $82,000 in the two Asset Purchase Agreements constituted the sale of the Koepsell Trademark." Like Koepsell, Kocovsky does not cite to any law.

¶ 33. In our notice of oral argument, we asked each party to provide a list of authorities relevant to the issue as we defined it: "One of the issues is whether it is the law (or should be the law) in Wisconsin that when goodwill is transferred, ownership of the trademark is also transferred .... Here, the issue is whether the trademark was transferred when the goodwill was transferred."

¶ 34. Trademark law in Wisconsin pertaining to this specific issue appears to be undeveloped. Therefore, the parties, like the trial court and this court, look to federal law for guidance. However, the law provided by the parties, while good law, is only *part* of the law that exists on this particular issue.

¶ 35. And, having examined a more complete representation of the law, we hold that there are material issues of fact regarding ownership of the trademark. For this reason we reverse the trial court's grant of summary judgment declaring Kocovsky the owner of the "Koepsell" trademark and we remand for a trial on whether Koepsell and/or Kovosky hold the rights to the mark. The trial court order limiting Koepsell's submission of evidence to the evidence he provided in discovery and on summary judgment is upheld.

413

¶ 36. Under federal law, it is a well-established rule that sale of a trade name or mark apart from its goodwill constitutes an invalid "assignment in gross." *See Marshak v. Green*, 746 F.2d 927, 929 (2nd Cir. 1984) (holding that a trade name or mark is merely a symbol of goodwill and has no significance apart from its goodwill); *see, e.g., Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 956 (7th Cir. 1992); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1350 (E.D.N.Y. 1994).

¶ 37. However, the federal courts established a different standard for evaluating sale of goodwill without transfer of trademark. This issue is addressed at length in *Berni v. International Gourmet Restaurants*, 838 F.2d 642 (2nd Cir. 1988). *Berni* involved a dispute over ownership and use of an Italian trademark. *Id.* at 644. The *Berni* court reaffirmed *Marshak*, noting that the mark means nothing without its accompanying goodwill. *Berni*, 838 F.2d at 646. The court also noted that although a trademark may not be sold independent of its goodwill, a mark or name's owner might retain the mark despite the sale of the business that underlies the mark or name. *Id.* To retain such ownership after sale of a business' assets, the mark or name's owner must (1) demonstrate intent to resume making the substantially same product, (2) retain some portion of the goodwill, and (3) resume operations within a reasonable time. *Id.* at 647. Retention of the mark without evidence of the aforementioned elements will constitute retention of an invalid "mark in gross." *Id.*

¶ 38. Thus, if a business sale contemplates retention of some assets, the *Berni* test is applied to determine whether the seller intended to resume using the

mark in a new enterprise. *See id.* Under this test, the plaintiff would have to meet the *Berni* requirements to demonstrate a protectable interest in the trademark or name.

¶ 39. We are persuaded that the law of *Berni* is appropriately applicable to the case at bar. Under the *Berni* test, there exist material issues of fact as to whether Koepsell had a protectable interest in the trademark or name "Koepsell."

¶ 40. On remand, in order to prove a protectable interest, Koepsell must (1) demonstrate intent to resume making the substantially same product, (2) retain some portion of the goodwill, and (3) resume operations within a reasonable time. *See id.* If Koepsell claims retention of the mark and cannot provide the evidence of the aforementioned elements, this will constitute retention of an invalid "mark in gross." *See id.*

¶ 41. **Motion for Reconsideration.** Koepsell filed a motion for reconsideration or, in the alternative, for vacating the judgment. With regard to the breach of contract claim, he argued:

> The basis of the determination to dismiss [Koepsell's] claim as found by the Court was not presented to the Court in [Kocovsky's] Motion for Summary Judgment. The Court concluded on its own that because [Koepsell] had never requested, denominated or designated the type of popcorn that should be used by [Kocovsky], that [Kocovsky] could not breach the contract with [Koepsell] under those circumstances . . . .
>
> . . . .
>
> Based on the misunderstanding of the facts and the further fact that the parties had not addressed this issue as part of [Kocovsky's] Motion for Summary

Judgment, the breach of contract claim should be reinstated to allow [Koepsell] to provide testimony as to what occurred in conversations between [Koepsell] and [Kocovsky] on this issue.

¶ 42. The trial court was not persuaded to reconsider the breach of contract claim. It was not error for the trial court to deny this part of the motion based on its determination that the quality of popcorn issue was, in fact, fully addressed.

¶ 43. With regard to reconsideration of the trademark issue, Koepsell argued:

[T]he trademark registration did not exist at the time of the execution of the Agreements between the parties, so no trademark registration was sold to [Kocovsky]; that there existed two (2) trademark registrations or certifications, which was unknown by the parties or the Court at the time the Court entered its ruling; that the Court failed to consider language as contained in the Agreements and the subsequent actions of the parties, which reflected that [Kocovsky] knew [he] had not purchased the exclusive rights to the name "Koepsell" in conducting business in the greater Milwaukee area; and finally, that [Kocovsky] had held [Koepsell] harmless from any claim as brought by [Kocovsky], thereby preventing [Kocovsky] from asserting any rights and/or interest in and to the "Koepsell" name.

¶ 44. Even though we are remanding the trademark issue, we agree with the trial court's decision to deny Koepsell's request for reconsideration on this issue. To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A "manifest error" is not demonstrated by the disappoint-

416

ment of the losing party. *Id.* It is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* (citation omitted). Contrary to this standard, Koepsell's motion merely took umbrage with the court's ruling and rehashed old arguments. It did not demonstrate that there was a disregard, misapplication or failure to recognize controlling precedent. As such, the trial court properly rejected the motion. Further, we disagree with Koepsell's claim that the trial court erred by failing to consider certain language in the Agreements. This bald assertion is without support and we glean none in the record. From our review, it is clear that Koepsell's motion was a thinly veiled attempt to introduce evidence that should have been introduced at the original summary judgment phase.

¶ 45. Koepsell, in addition to contending that the court was wrong to deny his motion, contends that the court abused its discretion in refusing to consider additional evidence attached to his motion. This additional evidence was a certification of the "Koepsell" trademark and an affidavit from Koepsell stating, among other things, that he "received a certification from the State of Wisconsin's Secretary of State's Office that the trademark application was valid for a period of twenty (20) years from December 11, 1980." His motion for reconsideration asserted that this information was "unknown by the parties or the Court at the time the Court entered its ruling."

¶ 46. A party may not use a motion for reconsideration to introduce new evidence that could have been introduced at the original summary judgment phase. *See id.* at 606 ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."). Neither Koepsell nor his

attorney explain in their affidavits why this information was "unknown" at the time the court entered its final judgment.

¶ 47. At a hearing on June 13, 2003, the court rejected this motion stating:

> [The evidence] cannot in any way be construed as newly discovered evidence. It's evidence if it existed would have been in the knowledge or under the control of [Koepsell] for a very long period of time. For whatever reason [Koepsell] chose not to pursue it or provide it to the court or to the defense prior to this point in time, and I'm satisfied it just simply is not going to be considered by the court under these circumstances.

¶ 48. We affirm the trial court's decision to deny the reconsideration motion with regard to the trademark as well. Koepsell made no showing why, through reasonable diligence, he could not have located this information earlier. Therefore, the trial court did not abuse its discretion in refusing to receive new evidence at this late stage. Koepsell is not entitled to relief from the judgment on the grounds of mistake or "newly discovered" evidence because he has shown neither. *See* Wis. Stat. § 806.07(1)(a) and (b).

¶ 49. **Frivolousness.** Lastly, Koepsell appeals the trial court's frivolousness determination with regard to the breach of contract claim. In response, Kocovsky asks that we uphold the trial court's frivolousness determination and further requests that we hold Koepsell's appeal to be frivolous. *See* Wis. Stat. § 809.25(3).

¶ 50. At the previously mentioned June 13, 2003 hearing, the court also addressed Kocovsky's motion for frivolous claims and for reasonable attorney's fees. Kocovsky's motion argued that Koepsell's breach of

418

contract claim was frivolous "because there was never any evidence to support the allegations, and because it was brought in bad faith solely to harass the Kocovsky defendants." The trial court agreed that there was no evidence that was presented through hearings or as part of the summary judgment that would in any way support the breach of contract claim. The court then granted the motion and awarded costs and fees.

¶ 51. Under Wis. Stat. § 814.025(3), the trial court is not allowed to conclude frivolousness without findings stating which statutory criteria were present —harassment, intent to maliciously injure, or knowledge or imputed knowledge that there was not any reasonable basis in law or equity for the position taken. *Sommer*, 99 Wis. 2d at 792. The trial court did not do so here. We therefore reverse and remand the frivolous issue as it pertains to the breach of contract claim with direction for the trial court to state on the record which statutory criteria were present. If the court is able to clarify on the record which statutory criteria were present to support it's finding of frivolousness, it's finding that Koepsell's breach of contract claim was frivolous shall be reinstated.

¶ 52. Koepsell's appeal of the summary judgment dismissing his trademark claim and granting Kocovsky's counterclaim declaring Kocovsky the exclusive owner of the "Koepsell" trademark is not frivolous: Koepsell has prevailed on this portion of his appeal. On the other hand, Koepsell's appeal of the breach of contract claim may very well be frivolous, especially if his breach of contract claim is frivolous. Regardless, we may not award appellate fees under Wis. Stat. § 809.25(3)(a) unless the *entire* appeal is frivolous. *See Manor Enters., Inc. v. Vivid, Inc.*, 228 Wis. 2d 382,

402–03, 596 N.W.2d 828 (Ct. App. 1999). Thus, we do not award fees and costs for a frivolous appeal. *See id.*

## Conclusion

¶ 53. The trial court properly dismissed Koepsell's breach of contract claim because the complaint does not state a claim for relief against Kocovsky.

¶ 54. However, we reverse the trial court's grant of summary judgment in Kocovsky's favor and its holding that Kocovsky is the exclusive owner of the "Koepsell" trademark. As to that claim, there are material facts in dispute and Koepsell is entitled to trial on the matter. Finally, we reverse the trial court's finding that the breach of contract claim was frivolous and direct the court on remand to clarify which statutory criteria were present for its finding; if this is done, the frivolous finding shall be reinstated.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.