COURT OF APPEALS
DECISION
DATED AND FILED

November 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1980**

Cir. Ct. No. **2019FA1713**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

PETITIONER,

PETITIONER-RESPONDENT,

V.

JAMAL CANNON,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: DAVID A. FEISS, Judge. *Affirmed.*

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Jamal Cannon appeals an injunction order granted in favor of the Petitioner, and the denial of a motion for reconsideration.  Cannon argues the circuit court erred by denying his request for a new reconsideration hearing based on newly discovered evidence.  Upon review, we affirm.

## BACKGROUND

¶2     On March 27, 2019, the Petitioner, Cannon's wife, was granted a temporary domestic abuse injunction against Cannon.  A contested hearing was held before an Assistant Family Court Commissioner on April 19, 2019.  The commissioner granted the Petitioner a four-year injunction.  Cannon timely filed a request for a *de novo* hearing.

¶3     At the *de novo* hearing, the Petitioner testified about multiple incidents of domestic violence.  She stated that in May 2014, when she was approximately four months pregnant with the parties' first child, Cannon slammed her into a bed and choked her while they were on a cruise ship.

¶4     The Petitioner further testified that in early December 2014, shortly before giving birth to the parties' first child, Cannon became upset with the Petitioner and began to shove her, pulled a gun on her, and told her that if she were to ever "get another man," "this [gun is] going to be for you and your man." The Petitioner stated that later that night, she woke up to Cannon pouring used kitty litter on her.  The Petitioner stated that when she "jumped up," Cannon "slammed" her to the ground.  The Petitioner stated that she sought medical treatment after the incident because she did not feel the baby moving.  The Petitioner did not seek police involvement because she feared her children being removed from her custody.

¶5    The Petitioner also testified that in January 2017, while picking her and Cannon's child up from her father's home, Cannon arrived at the Petitioner's father's home and began repeatedly shoving the Petitioner against her van. The Petitioner, who was one week from giving birth to her second child with Cannon, called for her father as Cannon was shoving her. The Petitioner's father called the police. Cannon was ultimately charged with domestic violence related offenses stemming from the incident.

¶6    The Petitioner further testified that "two things … happened in January of 2018." The Petitioner could not recall the particular day of the first incident, which involved what she considered threatening text messages. The Petitioner testified that Cannon texted her, "Did you take my son to another man house, yes or no? I'm not gon [sic] argue just answer how I handle this won't be verbal trust me. Answer yes or no I won't respond I'll just set up what needs to be set up." The Petitioner's trial exhibit showed that Cannon sent the messages on January 17, 2018.

¶7    The Petitioner testified that the second incident that occurred in January 2018 occurred as a result of her failure to respond to Cannon's text message from January 17, 2018. She testified that Cannon entered her home, woke her up, pushed her down on the bed and then choked her with his left hand while holding a gun in his right hand.

¶8    The Petitioner also testified that at some point during or after July 2018, Cannon choked her and applied pressure to her chest. She could not recall the exact day, but stated that the incident occurred "before the children went [back] to school." The Petitioner also stated that in December 2018, Cannon threatened and shoved her.

¶9    Cannon also testified at the hearing, telling the circuit court that he "categorically denied" committing any acts of violence against the Petitioner in January 2018 because he was not in the state at any point in January. Cannon's counsel introduced into the record numerous receipts of hotel bookings purporting to show that Cannon was not in Wisconsin in January 2018. Cannon explained that he travels frequently for work and often books multiple out-of-state hotel rooms for himself and his employees. Cannon's counsel also introduced numerous receipts from out-of-state hotels to prove that Cannon was not in Wisconsin during July 2018. Cannon stated that he was visiting family out of state during the unaccounted for dates in July 2018. The Petitioner's counsel noted that receipts showing hotel bookings did not prove Cannon's actual presence at any of those hotels.

¶10    Cannon denied committing any of the other alleged acts of violence against the Petitioner. After Cannon denied each of the individually alleged instances of violence, the circuit court called attention to a discrepancy in Cannon's testimony. Specifically, the circuit court noted that Cannon was in fact in court in Wisconsin on January 19, 2018, and July 24, 2018, in his criminal case, contrary to Cannon's contention that he was not in Wisconsin at that time. The circuit court explained that Cannon's testimony constituted perjury, prompting an off-the-record discussion between Cannon and his counsel. After the off-the-record discussion, Cannon told the circuit court, "I would literally fly in and fly out [for court]. I was not here overnight, nor was I in contact or with her…. I didn't recollect the exact court dates. I mistake maybe to that. But that doesn't mean I was around her." Cannon admitted he uses his name and credit card to make hotel reservations for "other contractors and employees," but insisted that he did not lie to the circuit court.

¶11 The circuit court found Cannon's testimony incredible and granted the Petitioner's injunction request.

¶12 On August 1, 2019, Cannon, *pro se*, filed a Notice of Motion and Motion for Reconsideration, asking that the circuit court dismiss the injunction "due to new evidence." Cannon's motion alleged that the Petitioner altered the text message that was introduced as evidence at the *de novo* hearing.

¶13 At a hearing on the motion, Cannon argued that the text was altered, but also told the circuit court,

> I do have evidence that I did fly in and out. That's a common practice with what I do. I do guest speaking occasionally, where I may fly into one town and out the same day. So I also had flight records to show that I was not trying to manipulate my testimony. I just was simply mistaken about that as well to go to my credibility.

The circuit court did not view the records and denied the motion, telling Cannon that it still did not find him credible because "It was only when the [c]ourt looked at the CCAP record and showed that you were here present in court for dates during those months that you then backtracked[.]"

¶14 This appeal follows.[1]

## DISCUSSION

¶15 Motions for reconsideration are reviewed under the erroneous exercise of discretion standard. ***Koepsell's Olde Popcorn Wagons, Inc. v.***

---

[1] Cannon does not appeal the circuit court's finding regarding the allegedly altered text, but rather contends that the circuit court erred in refusing to view the flight records prior to rendering its decision.

*Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. "We affirm a [circuit] court's discretionary determination when the court applies the correct legal standard to the facts of record and reaches a reasonable result." *Keller v. Keller*, 2002 WI App 161, ¶6, 256 Wis. 2d 401, 647 N.W.2d 426.

¶16 Here, the newly discovered evidence relevant to this appeal consisted of Cannon's declarations that he "had flight records" to show that he was not in Wisconsin at the time of a few of the incidents. Although the circuit court refused to look at any flight records, the court found that Cannon was not credible during the *de novo* hearing and was not credible at the reconsideration hearing.

¶17 A key aspect of the circuit court's findings was the court's determination that Cannon lacked credibility. Witness credibility is within the sole province of the fact-finder. *See Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980). The circuit court noted that Cannon only attempted to correct the record after the court noted the inconsistencies in Cannon's testimony. Therefore, we see no reason to disturb the circuit court's credibility determinations.

¶18 Moreover, the evidence Cannon claims to have is not newly discovered. A defendant seeking a new trial based on newly discovered evidence must prove by clear and convincing evidence all of the following: (1) the evidence was discovered after trial; (2) "the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case;" and (4) the evidence is not merely cumulative to the evidence that was introduced at trial. *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60 (citation

and quotation marks omitted). If all four factors are proven, "then it must be determined whether a reasonable probability exists that had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42.

¶19    Here, contrary to Cannon's contention, flight records purporting to show that Cannon was not in Wisconsin during the January and July 2018 incidents would have existed at the time of Cannon's *de novo* hearing. Those records would have been in Cannon's possession prior to the hearing and Cannon would have been aware of their supposed importance due to the nature of the injunction motion. Cannon's contention that he was unaware of the necessity for the records does not affect whether they were discoverable prior to the hearing. We agree with the Petitioner that "it is disingenuous for Cannon to argue his criminal court hearings during those months did not come to his notice until after the domestic abuse injunction hearings, or that he had exercised due diligence in seeking to discover his flight records." Thus, Cannon fails to satisfy the first two factors necessary to establish newly discovered evidence. Moreover, because of the circuit court's credibility determinations, we cannot conclude that the outcome of Cannon's hearing would have been different even with the flight records. Accordingly, we conclude that Cannon has not established that the circuit court erroneously exercised its discretion in denying his motion for reconsideration; therefore, he is not entitled to a new reconsideration hearing on the basis of newly discovered evidence.

¶20    For the foregoing reason, we affirm the circuit court.

    *By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).