COURT OF APPEALS
DECISION
DATED AND FILED

March 10, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1034**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019FA1192**

**IN COURT OF APPEALS
DISTRICT IV**

---

IN RE THE MARRIAGE OF:

MEGAN W. DETTLOFF-MEYER,

    JOINT-PETITIONER-RESPONDENT,

  V.

NATHAN C. MEYER,

    JOINT-PETITIONER-APPELLANT.

---

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Nathan Meyer (Meyer) challenges the circuit court's valuation, for purposes of property division, of a business that Megan Dettloff-Meyer (Dettloff) purchased from her parents less than one year before the parties filed a joint petition for divorce.[1]  Specifically, Meyer argues that:  (1) the court erred in determining the value of the business based on the purchase price rather than on his expert's trial testimony as to the business's fair market value at the time of divorce; and (2) the court erroneously did so by revising the court's original valuation on Dettloff's motion for reconsideration.[2]  We reject Meyer's arguments and, therefore, affirm.

## BACKGROUND

¶2      As stated, this appeal concerns the valuation, for the purposes of property division, of the business that Dettloff purchased from her parents and the circuit court's revising of its finding as to the business's value on Dettloff's motion for reconsideration.  The undisputed facts pertinent to these two topics are as follows.

---

[1] In its judgment of divorce, the circuit granted Megan Dettloff-Meyer's request "to resume the use of her former surname, Dettloff," and in her appellate briefing she refers to herself as Ms. Dettloff.  Accordingly, we will refer to the appellant as Meyer and to the respondent as Dettloff.

[2] Meyer also argues that the circuit court erred in citing, in support of its valuation determination, an unpublished per curiam opinion of this court, contrary to WIS. STAT. RULE 809.23(3) (2019-20).  We agree.  However, the opinion cited reflects well-established legal principles stated in published case law and, therefore, the error does not affect the outcome of this appeal.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3    Meyer and Dettloff were married in 2009 and filed a joint petition for divorce in July 2019.  They submitted a marital settlement agreement regarding legal custody and physical placement of their two minor children and disputed child support, maintenance, and property division.  The primary dispute regarding property division concerned the value of Dettloff's business.  Each party retained an expert witness to determine the value of Dettloff's business and her income that she would receive from the business.  Meyer's income as a scientist that is separate from the business was undisputed.  The circuit court held a two-day court trial in June 2020, at which Dettloff, Meyer, and each of their expert witnesses testified.

¶4    The following undisputed facts regarding the business were established at trial.  Dettloff's father is a veterinarian and owned, with Dettloff's mother, Dr. Paul's Company LLC, for many years.  Dr. Paul's Company manufactured and sold herbal products for treating livestock.  Dettloff's father ran the business out of his home.  Dettloff purchased Dr. Paul's Company from her parents on October 1, 2018, for the price named by her parents, $500,000, comprising $431,527 in good will and $68,473 in inventory.[3]  The purchase was memorialized by a business asset purchase agreement and a promissory note for a $500,000 loan to Dettloff from her parents that provided for monthly payments at 3.9% interest of $3,504.72.[4]  Prior to trial, the parties agreed that no portion of the business was received as a gift.

---

[3] Dettloff operates the business as Dr. Paul's Lab LLC.  We will refer to the business she purchased, Dr. Paul's Company LLC, and the business she now owns, Dr. Paul's Lab LLC, as "Dettloff's business" or "the business."

[4] We will follow the circuit court's lead and refer to this loan as "the business purchase loan."

¶5 Soon after Dettloff purchased the business, she took out another personal loan from her parents for $57,920 for "working capital" for the business.[5]

¶6 Meyer's expert, Craig Billings, opined that the business's value was $548,000 and Dettloff's income was $196,657. Dettloff's expert, Gaylene Stingl, opined that the business's value was negative $171,000 and Dettloff's income was $63,091. As to the business's value, the experts disagreed primarily regarding the necessity and reasonableness of certain expenses incurred by Dettloff since she purchased the business and of her anticipated future expenses, and the anticipated profitability of the business.

¶7 In November 2020, the circuit court issued a written "Findings of Fact, Conclusions of Law and Judgment of Divorce." The court stated the legal standard as to the valuation of Dettloff's business, explaining that its value must be established as the fair market value based on a sale between a willing seller and a hypothetical reasonable buyer.

¶8 The circuit court found not credible much of Dettloff's and Stingl's testimony regarding the necessity and timing of the expenses incurred by Dettloff since she purchased the business and the projected expenses. The court discounted that testimony as not relevant to what a hypothetical buyer would pay for the business. The court also found not credible Stingl's testimony regarding the anticipated profitability of the business.

¶9 The circuit court found that Billings's report "was based on documented historical figures and reasonable expectations of future revenue and

---

[5] We will follow the circuit court's lead and refer to this loan as "the equipment loan."

expenses [and] more closely fits with [Dettloff's] recent purchase of the business and her stated expectations." Accordingly, the court accepted Billings's valuation of the business, incorporated that value in its property division, and ordered Dettloff to pay Meyer an equalization payment of $84,581.

¶10 The circuit court also ordered Dettloff to pay Meyer child support of $1,077 monthly and to pay Meyer maintenance of $900 monthly for five years.

¶11 Dettloff subsequently filed a motion for reconsideration "based on a manifest error of law and facts." Specifically, Dettloff sought a redetermination of the "proper" value of the business and the corresponding equalization payment, and a recalculation of child support and maintenance. As to the business valuation, Dettloff asserted that the circuit court erred in finding that Billings valued the business at $548,000, when the evidence established that Billings valued the business at $1,092,461, and then subtracted the outstanding debt against the business (modified by some undisputed adjustments) to reach the net value of $548,000. Dettloff argued that there was neither any evidence in the record nor any factual finding by the court showing "how the value of the business increased from its $500,000 purchase price in October 2018 to a value of $1,092,461 20 months later [at the time of trial]."

¶12 The circuit court held a hearing on Dettloff's motion, after which it issued a written order denying Dettloff's motion as to child support and maintenance and granting her motion as to the business valuation and equalization payment. Specifically, the court did not change its findings as to the weight of the evidence and the credibility of the testimony regarding income and other topics relating to its child support and maintenance orders. As to the business valuation, the court found that Billings's testimony did "not support a business value of over

$1,000,000 for purposes of property division" and determined the value of the business based on the purchase price that Dettloff paid and the debt that Dettloff incurred when she purchased the business. The court ordered that the property division be amended accordingly.

¶13     Meyer then filed a motion for reconsideration, asserting that Billings properly subtracted the $500,000 business purchase loan from the $1,092,461 to arrive at $548,000 (after applying undisputed adjustments) as the value of the business at the time of trial. Meyer argued that there was no evidence showing that the gross value of $1,092,461 was too high.

¶14     The circuit court held a hearing on Meyer's motion. At the conclusion of the hearing, the court denied the motion to reconsider its findings in its earlier order (on Dettloff's motion) regarding Billings's testimony and the valuation of the business. The court issued a written order in which it made additional findings to clarify its earlier order granting Dettloff's motion and amended the judgment based on those additional findings, consistent with its remarks at the hearings on Dettloff's and Meyer's motions.

¶15     Specifically, the circuit court clarified the part of its earlier order granting Dettloff's motion for reconsideration, explaining why: (1) it rejected both experts' opinions regarding the value of the business; (2) it was appropriate to "look to" the business's recent purchase price, represented by the total of the business purchase and equipment loans assumed at or near the time of purchase, to determine its value; and (3) the reduction at the time of trial in the principal of the business purchase and equipment loans assumed by Dettloff at the time of the purchase was "an appropriate measure for assigning a value" to the business for purposes of property division. The court found that subtracting the principal

balance of the two loans at the time of trial, $512,690, from the original total of the loans at or near the time of purchase, $557,920, resulted in a net business value at the time of trial of $45,230, and ordered that Meyer pay an equalization payment of $139,924 to Dettloff.

¶16    Meyer appeals.

## DISCUSSION

¶17    We begin with Meyer's challenge to the circuit court's finding that the value of the business for purposes of property division was $45,230, and we then address Meyer's challenge to the court making that finding on Dettloff's motion for reconsideration.

## I. VALUE OF BUSINESS

¶18    Meyer argues that the circuit court erroneously determined the value of the business for purposes of property division. We first present the applicable standard of review and legal principles. We next present additional background pertinent to the court's determination of that value. We then explain why we conclude that Meyer fails to show that the court erred.

### A. Applicable Standard of Review and Legal Principles

¶19    The determination of the value of an asset for purposes of property division is a finding of fact. *McReath v. McReath*, 2011 WI 66, ¶22, 335 Wis. 2d 643, 800 N.W.2d 399. The applicable standard of review and related legal principles are well established:

> Assets of the marital estate are valued as of the date the divorce is granted. This court will not upset the [circuit] court's valuations of assets unless the valuations

> are against the great weight and clear preponderance of the evidence. Weighing the evidence and determining the credibility of witnesses are matters for the trial court and, where more than one inference can reasonably be drawn from the evidence, we are obliged, on review, to accept the one drawn by the trier of fact.
>
> ….
>
> The valuation of assets is a difficult and imprecise obligation of a trial judge in a divorce action…. [T]here may be several conflicting opinions of the value of a certain asset. As the fact finder, it is the trial judge who must draw reasonable inferences and come to reasonable, albeit disputable, conclusions as to the value of assets as of the date the divorce is granted.

*Holbrook v. Holbrook*, 103 Wis. 2d 327, 334-35, 309 N.W.2d 343 (Ct. App. 1981) (footnotes omitted).

¶20 The standard of review and legal principles that apply specifically to a circuit court's determination of the value of a business such as Dettloff's are similarly well established:

> In divorce actions, trial courts are not required to accept any one method of valuation over another. However, in valuing marital assets, courts are obligated to ensure that a fair market value is placed on marital property. Fair market value is not a valuation method but a definition assuming a sale by one who desires, but is not obligated, to sell, and a purchase by one willing, but not obligated, to buy. Thus, determining the fair market value of a closely-held corporation turns on the credibility of the expert as well as the methods and analyses employed by the witness to arrive at his or her conclusion.

*Schorer v. Schorer*, 177 Wis. 2d 387, 399, 501 N.W.2d 916 (Ct. App. 1993) (citations omitted).

### B. The Circuit Court's Determination of the Business's Value

¶21     The circuit court revised and clarified its determination of the value of Dettloff's business in its decisions on the parties' motions for reconsideration. The court's decisions reflect the following three components of the court's determination.

¶22     First, the circuit court found not credible both expert witnesses' testimony regarding the value of the business. Specifically, the court found that it made no "logical sense" to ascribe a negative value, as Stingl opined, to what the documentation presented by both parties showed to be a profitable business at and since the time of purchase. The court also found that it made no "logical sense" to ascribe a value of more than double the amount of the purchase price that Dettloff paid less than one year before the parties filed for divorce and less than two years before the trial, as Billings opined. As to the latter, the court found that nothing in Billings's cash-flow analysis supported a value that high, and that there was no testimony regarding Dettloff's work with the business "that would justify an increase in value in that short period of time." The court also explained that a value that high would necessarily imply that Dettloff's parents gifted a portion of the business as part of the $500,000 purchase price, but the parties agreed that no gift was included as part of the purchase price.

¶23     Second, the circuit court found that the best measure of the value of the business at the time of purchase was the recent purchase price, comprising the sum of the business purchase and equipment loans assumed at or near the time of purchase, which occurred less than one year before the parties petitioned for divorce and less than two years before trial. The court explained that the basis for that finding was the absence of any credible evidence offered by the parties'

experts showing either a different value of the business at the time of purchase or any "substantial increase in the value of the business" since the time of purchase.

¶24    Third, the circuit court found that the value of the business at the time of trial, for purposes of property division, was the sum of the two loans that Dettloff had assumed at or near the time of purchase; specifically, the business purchase loan of $500,000 for the purchase price plus the equipment loan for an additional $57,920, minus the principal owing on those loans at the time of trial. The court explained that, having found that neither expert's valuation of the business made "logical sense," it determined based on the evidence that the business value at the time of trial for purposes of property division was "what was paid for it," meaning the sum of the business purchase loan and the equipment loan, minus "what was owed on it," meaning the outstanding balance on the two loans. Meyer agreed in the circuit court that that calculation yielded a "net value of $45,230."

### C.  Circuit Court's Valuation of Business Not Erroneous

¶25    Meyer asserts that the circuit court's use of the purchase price to determine the business's value at trial was factually and legally erroneous. We address and reject each asserted error as follows.

### 1.  Factual Error

¶26    Meyer asserts that the court's determination of the business's value was factually erroneous in two respects. First, Meyer notes that there was no evidence that the purchase price was the fair market value at the time of purchase. Consequently, Meyer argues that, absent such evidence, the court had no basis to reject Billings's valuation of over $1 million eighteen months later as, according

to the court, representing a doubling of the business's fair market value in that short time without any evidentiary support for such an increase. However, the court explained that it was precisely because neither expert presented evidence of the business's fair market value at the time of purchase, together with the absence of evidence showing any substantial increase in the value of the business since its purchase, that the court determined that it was appropriate to look to the purchase price to determine the business's fair market value at the time of trial for purposes of property division. In the absence of any evidence to support a finding of increased value, the court was entitled to find that the recent purchase price, comprising the sum of the purchase price and equipment loans, was the best indicator of value.

¶27 Second, for the first time in his reply brief, Meyer asserts that there was ample evidence to support an increase in the business's value, comprising testimony as to Dettloff's efforts to improve the business and its increase in revenue. We generally do not consider arguments raised for the first time in the reply brief. *See* ***Bilda v. County of Milwaukee***, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 ("It is a well-established rule that we do not consider arguments raised for the first time in a reply brief."). Moreover, we reject this argument on its merits. Meyer cites no evidence to support Billings's opinion that the business's value increased by more than 100% in the short time between purchase and trial. Nor does Meyer address the circuit court's discrediting of Dettloff's and Stingl's testimony as to the reasonableness and necessity of Dettloff's improvement expenses as relevant to a determination of the business's value. While the court did credit Billings's testimony that the business continued to be profitable, the court also found that there was no evidence showing a "substantial increase in the value of the business."

¶28    Ultimately, both of Meyer's factual error arguments ignore our standard of review stated above, by which the circuit court's factual findings are reviewed using the clearly erroneous standard, and by which we defer to the court's assessment of weight and credibility.

¶29    In sum, we conclude that Meyer fails to show that the circuit court's findings regarding the business's valuation for purposes of property division were clearly erroneous.

### 2. Legal Error

¶30    Meyer asserts that the circuit court's failure to accept Billings's testimony as to the business's fair market value at the time of trial, and to use the business's purchase price instead to determine its value at the time of trial, was legally erroneous.  Meyer cites case law consistent with that quoted above, to the effect that a court is to determine the fair market value of a business at the time of divorce.  Meyer argues that the court's use of the business's purchase price to determine its fair market value was not a proper application of the well-established principle that "an arm[']s-length sale price is the best indicator to determine fair market value." *Darcel, Inc. v. City of Manitowoc Bd. of Rev.*, 137 Wis. 2d 623, 624, 405 N.W.2d 344 (1987).  As we explain, this argument is essentially a repackaging of its factual argument addressed above, and we reject it on similar grounds.

¶31    Specifically, Meyer argues that the business's purchase price did not represent its fair market value because the evidence showed that the sale was not at arm's length.  That evidence includes that the sale was between parent and child, and that Dettloff did not review any financial documents or conduct any financial analysis in an attempt to determine the business's fair market value at the

12

time of purchase.[6]   However, as Meyer acknowledges, the circuit court's determination of the business's fair market value "turns on the credibility of the expert as well as the methods and analyses employed by the witness to arrive at his or her conclusion." *Schorer*, 177 Wis. 2d at 399.   And, the weight and credibility to be given to the opinions of expert witnesses is uniquely within the province of the fact finder. *Id.* at 396.   Here, as explained above, the court explained why it discredited both experts' opinions as to the business's fair market value and why it found that the business's purchase price (comprising the sum of the business purchase and equipment loans assumed by Dettloff) was an appropriate indicator of its fair market value at the time of trial.   Meyer fails to show that this finding, together with the court's implicit finding that the evidence cited by Meyer did not suffice to show to the contrary, was clearly erroneous.

¶32   Related to this legal error argument, but in a different section of his appellate brief, Meyer asserts that the circuit court found that "the purchase price was not an arm[']s length transaction."   However, whether the purchase was an arm's length transaction is not dispositive.   Ultimately, the court rejected the parties' arguments on that topic, finding that it may "look to the recent sales price to determine the value of the business" in the absence of:  any expert testimony as to its value at the time of purchase; credible expert testimony as to the business's value at the time of trial; and any testimony "that would justify an increase in value in that short period of time."

---

[6] Meyer also asserts that the evidence includes that Dettloff's parents did not similarly attempt to determine the business's fair market value, but, as Dettloff notes, there was no evidence as to what Dettloff's parents did in this respect.  The circuit court did find that Dettloff's father retained an attorney for the transaction.

¶33    In sum, we conclude that Meyer fails to show that the circuit court committed legal error in "look[ing] to" the purchase price to determine the business's value at trial for purposes of property division.

## II.  MOTION TO RECONSIDER

¶34    Meyer argues that the circuit court erroneously exercised its discretion in granting Dettloff's motion for reconsideration as to the value of the business for purposes of property division.  We begin with the applicable standard of review, next present additional background pertinent to the court's decision, and then explain why Meyer fails to show that the court erred.

### A.  *Applicable Standard of Review*

¶35    We review a circuit court's decision on a motion for reconsideration using the erroneous exercise of discretion standard of review.  ***Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.***, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853.  Under that standard, we will affirm a discretionary decision as long as the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a reasonable conclusion.  ***Franke v. Franke***, 2004 WI 8, ¶54, 268 Wis. 2d 360, 674 N.W.2d 832.  We generally look for reasons to sustain a circuit court's discretionary decisions.  ***Miller v. Hanover Ins. Co.***, 2010 WI 75, ¶30, 326 Wis. 2d 640, 785 N.W.2d 493.

¶36    In this case, Dettloff moved for reconsideration under WIS. STAT. § 805.17(3) which provides that following a trial to the court, "[u]pon its own motion or the motion of a party made not later than 20 days after entry of judgment, the court may amend its findings or conclusions or make additional

14

findings or conclusions and may amend the judgment accordingly." To prevail on a motion for reconsideration under this subsection, a movant must either present newly discovered evidence or demonstrate that the circuit court's prior decision contained a manifest error of law or fact. **Koepsell's**, 275 Wis. 2d 397, ¶44; *see also* **Schinner v. Schinner**, 143 Wis. 2d 81, 92-93, 420 N.W.2d 381 (Ct. App. 1988) (applying the "manifest error" standard to a motion for reconsideration under § 805.17(3)).

¶37 Mere disappointment of the losing party is not sufficient to demonstrate manifest error. **Koepsell's**, 275 Wis. 2d 397, ¶44. Instead, a manifest error is "that self-evident kind of error which results from ordinary human failings due to oversight, omission, or miscalculation ... [and] which tends to immediately reveal itself as such to reasonable legal minds." **Schinner**, 143 Wis. 2d at 92-93.

### B. Additional Background

¶38 As stated, the circuit court initially determined that the value of Dettloff's business for the purposes of property division was as opined by Billings, which was $548,000.

¶39 As the circuit court explained in its oral rulings and written orders on the parties' motions for reconsideration, it granted Dettloff's motion and revised its determination of the business's value because its original decision regarding the valuation of the business was based on a manifest error of fact. That manifest error was the court's erroneous factual finding comprising its miscalculation of the business's value based on discredited expert witness testimony that made no "logical sense" in light of the purchase price paid and debt incurred by Dettloff a short time before the petition for divorce was filed and the trial was held.

¶40    In its written order granting Dettloff's motion, the circuit court explained its error as follows:

> Finding the value of the business to be $548,000 assumes a purchase price of over one million dollars, which was an erroneous finding by the Court. While the cash flow analysis done by [Meyer's] expert supports the maintenance and child support awards, it does not support a business value over $1,000,000 for purposes of property division, especially given the fact that both parties agree there was no gift included in the price.

¶41    The circuit court expanded on this point at the hearing on Meyer's motion. The circuit court explained that, upon hearing the parties' arguments at the hearing on Dettloff's motion, the court reviewed the expert reports and testimony and identified the factual error that required correction: that the court's "intention was never to value this business at a sum that doubled the value in a year—that represented a year's worth of tax returns." The court repeatedly emphasized that to value the business "so that it suddenly doubled in value in a year … does not make sense … based on the testimony."

¶42    At the hearing on Meyer's motion and in the written order that followed, the circuit court also clarified its reconsideration of the business's value. Dettloff's counsel pointed out that it appeared that the court had taken Billings's value of $548,000, which represented the gross value of $1,048,000 minus the business purchase loan of $500,000, and then subtracted that same debt again to reach a net business value of $48,000. The court responded that it had not intended to do that. Rather, as stated above, it determined that, in the absence of any expert testimony as to the business's value at the time of purchase or any credible testimony that the business had significantly increased in value since its purchase, it was appropriate to use the purchase price to determine the business's value at trial. The court looked to what Dettloff paid for the business, which the

court found was the sum of the $500,000 business purchase loan and the $57,920 equipment loan, and found that subtracting from that sum what Dettloff owed on those loans at the time of trial was an appropriate measure of the business's value at the time of trial for the purposes of property division.

## C. No Erroneous Exercise of Discretion

¶43     Meyer argues that the circuit court erroneously granted Dettloff's motion for reconsideration for five reasons. We address each reason in turn.

¶44     First, Meyer argues that the circuit court's stated reason for granting Dettloff's motion, the failure to account for "the debt against [the business]," is not supported by the record. Meyer explains that Billings, in calculating the business's value, "already subtracted the debt from the 'gross' value … to arrive at $548,000 after applied discounts." Thus, according to Meyer, the court "misunderstood" Billings's testimony and erroneously determined that Billings's value did not account for the business debt.

¶45     Meyer correctly represents that the circuit court, in its written order granting Dettloff's motion, stated that "there is no manifest error of law or fact regarding all issues except the debt against [the business]." However, Meyer overlooks the portion of that same order where the court explained what it meant by reference to the business debt. As stated above, the court explained that when the debt is added to Billings's net value of $548,000, the resulting gross value of $1,092,461 represents a doubling of the business's purchase price. The court

clarified that it was that gross value that was the manifest error of fact, which had no evidentiary basis in the record.[7]

¶46     Second, Meyer argues that the circuit court's determination that Billings's gross value represented a doubling of the business's value at the time of purchase had no support in the record and was not relevant to the determination of the business's fair market value at the time of trial.  We have already addressed and rejected this argument as part of our analysis of Meyer's challenge to the court's valuation of the business.  *See* ¶¶24-31 above.

¶47     Third, Meyer argues that the circuit court did not explain why its initial valuation was a manifest error of law or fact.  However, the oral rulings and written orders described in detail in the background sections of this opinion refute this argument, and we need not repeat here the court's explanations detailed in those sections.  Meyer also criticizes the court's explanation of why it credited the parts of Billings's analysis that related to child support and maintenance (having rejected Dettloff's arguments on those topics as merely disagreeing with "who the Court should believe"), but not those parts that related to property division.  Meyer cites no law supporting his proposition that it was wrong for the court to do so.

¶48     Fourth, Meyer argues that the circuit court relied on arguments and evidence not presented at trial regarding two specific points.  One point concerns Dettloff's argument on reconsideration that, given the purchase price of $500,000,

---

[7] To the extent that Meyer means to argue that the circuit court itself erred by again subtracting the business debt to determine the proper value of the business, the court later clarified that it did not intend to do so and explained that it reached the final value of $45,230 based on the business's purchase price comprising Dettloff's business purchase and equipment loans and what Dettloff owed on those loans at the time of trial.  *See* ¶41 above.

to accept Billings's gross value of $1,092,461 would require determining that a portion of the business's value was a gift. Meyer contends that Dettloff did not make this argument at trial. However, Dettloff had no reason to make this argument until the circuit court made its finding as to the business's value based on Billings's valuation, at which point Dettloff properly raised it to support her motion based on a manifest error of fact. Meyer also contends that Dettloff's argument was contrary to the parties' pre-trial agreement that no portion of the business was received by Dettloff as a gift. However, Dettloff's argument, by explaining how *the court's finding* was contrary to the parties' pre-trial agreement, was entirely consistent with that agreement.

¶49     The other point concerns Dettloff's argument that Billings's gross value represented a doubling in the business's value from the date of purchase. Meyer reprises his arguments, rejected above, that there was no evidence of the business's value at the date of purchase. Meyer also contends that Dettloff did not make this argument at trial. However, as with Dettloff's gift argument, Dettloff had no reason to make this argument until the circuit court credited Billings's valuation, at which point Dettloff properly raised it to support her motion based on a manifest error of fact.

¶50     Meyer's fifth argument is that the circuit court erroneously changed its valuation of the business after finding that Dettloff had not met her burden to show a manifest error of law or fact. Meyer misrepresents the court's decision. The court found that Dettloff had not met her burden as to the court's child support and maintenance decisions, but that Dettloff had shown a manifest error of

fact as to the court's property division decision, for the reasons stated numerous times above.[8]

¶51    In sum, on our review of the record, we conclude that the circuit court did not erroneously exercise its discretion by reconsidering its earlier decision regarding the valuation of the business. The court reasonably determined on reconsideration that it had erroneously determined the business's value for purposes of property division based on a calculation and testimony that had no evidentiary support in the record.

## CONCLUSION

¶52    For all the reasons explained, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] In addition, Meyer takes issue in his reply brief with Dettloff's suggestions in her respondent's brief that the circuit court found that Dettloff had met her burden of showing a manifest error of fact based on "inconsistencies, errors and omissions" regarding both experts' testimony, such that the court credited parts of Stingl's testimony over Billings's testimony. To the extent that Dettloff may be so arguing, we do not rely on such an argument. Rather, we rely only on the circuit court's pertinent oral rulings and written decisions.