David F. WILLIAMS,
Plaintiff-Respondent,†

v.

AMERICAN TRANSMISSION COMPANY, LLC,
Defendant-Appellant.

Court of Appeals

*No. 2007AP52. Submitted on briefs August 7, 2007.
—Decided October 4, 2007.*

2007 WI App 246

(Also reported in 742 N.W.2d 882.)

† Petition to review denied 2/21/08.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *George K. Steil, Sr.*, and *Duffy Dillon* of *Brennan, Steil & Basting, S.C.*, Janesville.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Richard E. Hemming* and *Michelle M. Zickert* of *Consigny, Andrews, Hemming & Grant, S.C.*, Janesville.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. American Transmission Company appeals a circuit court order allowing David Williams to proceed with his claim for inverse condemnation against American Transmission.[1] American Transmission, which maintains electrical power poles and transmission lines on Williams' property, asserts that its use of the property for more than ten years establishes the prescriptive right to continue the use under Wis. Stat. § 893.28 (2005–06).[2] We agree and, therefore, reverse the circuit court's order and remand for further proceedings.

---

[1] "Inverse condemnation is a procedure where a property owner petitions the circuit court to institute condemnation proceedings." *Koskey v. Town of Bergen*, 2000 WI App 140, ¶ 1 n.1, 237 Wis. 2d 284, 614 N.W.2d 845.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

## Background

¶ 2. The property now owned by Williams was previously owned by CMC Heartland Partners for operation of a railroad. In 1969, the railroad company and American Transmission (formerly Wisconsin Power and Light Company) entered into a "Pole and Wire Agreement" pertaining to Heartland Partners' property. As its title suggests, the agreement permitted American Transmission to construct and maintain electrical poles and transmission lines on Heartland Partners' property. The agreement was revocable upon thirty days' written notice:

> Either party hereto may terminate this agreement without cause and without liability therefor upon giving to the other party thirty days notice in writing of the desire so to do.

Pursuant to the agreement, American Transmission constructed and maintained electrical power poles and transmission lines on the property.

¶ 3. In February 2003, Heartland Partners sold the property to Williams. Williams demanded that American Transmission remove the poles and transmission lines from the property. After his demands went unmet, Williams petitioned for inverse condemnation against American Transmission. American Transmission counterclaimed, asserting that, under WIS. STAT. § 893.28(2), it had a prescriptive right to continue its use of Williams' property. Section 893.28(2) requires "[c]ontinuous use of rights in real estate of another for at least 10 years" by a utility.[3]

---

[3] WISCONSIN STAT. § 893.28(2) does not use the term "utility," and we use the term only as shorthand. There is no dispute here that American Transmission is the type of entity covered by the

¶ 4. Both parties moved for judgment on the pleadings. The circuit court concluded that WIS. STAT. § 893.28 does not apply. The court reasoned that the agreement between American Transmission and the prior owner was nothing more than a license that did not "create 'rights in real estate of another.'" Accordingly, the court issued an order allowing Williams to proceed with his inverse condemnation claim. We granted American Transmission's petition for leave to appeal from that non-final order.

### *Discussion*

¶ 5. We must interpret and apply WIS. STAT. § 893.28(2) to undisputed facts, a question of law for our *de novo* review. *See State v. Wilke*, 152 Wis. 2d 243, 247, 448 N.W.2d 13 (Ct. App. 1989). Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, our inquiry is ordinarily at an end. *Id.* When statutory language is ambiguous, however, we may consult "extrinsic sources" such as legislative history. *Id.*, ¶¶ 46, 50. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses. *Id.*, ¶ 47. In addition, we must interpret statutory language to avoid absurd or unreasonable results. *Id.*, ¶ 46.

¶ 6. WISCONSIN STAT. § 893.28(2) provides, in pertinent part:

> *Continuous use of rights in real estate of another for at least 10 years* by a domestic corporation organized to

statute. Thus, we do not address what types of entities may or may not be covered by § 893.28(2).

furnish telegraph or telecommunications service or transmit heat, power or electric current to the public or for public purposes, by a cooperative association organized under ch. 185 or 193 to furnish telegraph or telecommunications service, or by a cooperative organized under ch. 185 to transmit heat, power or electric current to its members, *establishes the prescriptive right to continue the use,* except as provided by s. 893.29.

(Emphasis added.) The question the parties dispute is whether the construction and maintenance of American Transmission's electrical poles and transmission lines, pursuant to the Pole and Wire Agreement, constitutes "use of rights in real estate of another" within the meaning of the statute.

¶ 7. Williams argues that the Pole and Wire Agreement is nothing but a license. He cites *Schwartz v. Evangelical Deaconess Society*, 46 Wis. 2d 432, 175 N.W.2d 225 (1970), which defines a "license" as simply a "privilege to do one or more acts on the land of another without possessing an actual land interest." *Id.* at 438–39. Williams further argues that the rights granted by the agreement are revocable and, therefore, do not constitute an interest in land. Williams concludes that, because the agreement is revocable and does not grant an interest in land, American Transmission has not been engaged in the use of rights in his real estate. We are not persuaded.

■

¶ 8. We assume, without deciding, that Williams is correct that the agreement is no more than a license, as Williams defines that term. We further assume, without deciding, that such a license does not constitute a "land interest" within the meaning of the case law Williams relies on. Still, Williams provides no reason,

and we discern none, why exercising a revocable privilege to do something on another's land does not constitute "use of rights in real estate of another." WISCONSIN STAT. § 893.28(2) does not refer to an "interest" in land; it refers to "use of rights." We conclude that "use of rights" encompasses the use at issue here.

¶ 9. We recognize that our interpretation of WIS. STAT. § 893.28(2) has the effect in some circumstances of negating the ability of a landowner to revoke a permissive use of his or her property. It would appear, however, that this is precisely what the legislature intended. The statutory language, particularly when read in the context of the entire statute, shows that § 893.28(2) applies to permissive uses. Section 893.28(2) does not specify that the "use" be non-permissive. Indeed, § 893.28(2) does not specify that the use be of any particular sort whatsoever. In contrast, the legislature included a requirement of "adverse" use in § 893.28(1), a closely related provision pertaining to prescriptive rights for non-utilities.[4] By omitting any requirement that a use be "adverse" under § 893.28(2), the legislature indicated that the elements for "adverse" use under § 893.28(1) are not necessary for prescriptive rights under § 893.28(2). Those elements include that the use be without permission. *See County of Langlade v. Kaster,* 202 Wis. 2d 448, 457, 550 N.W.2d 722 (Ct.

---

[4] WISCONSIN STAT. § 893.28(1) provides, in full:

> Continuous adverse use of rights in real estate of another for at least 20 years, except as provided in s. 893.29 establishes the prescriptive right to continue the use. Any person who in connection with his or her predecessor in interest has made continuous adverse use of rights in the land of another for 20 years, except as provided by s. 893.29, may commence an action to establish prescriptive rights under ch. 843.

App. 1996) (prescriptive right under § 893.28(1) requires that use be without permission because "[h]ostile intent" does not exist if the use is permissive); *see also Ludke v. Egan*, 87 Wis. 2d 221, 230, 274 N.W.2d 641 (1979) ("A use which is permissive is . . . not adverse."); BLACK'S LAW DICTIONARY 1577 (8th ed. 2004) ("adverse use" means "use without license or permission"). Thus, by omitting any requirement that the use under § 893.28(2) be "adverse," the legislature brought permissive uses within the meaning of the statute.

¶ 10. Our reading of WIS. STAT. § 893.28(2) is confirmed by the statute's legislative history. *See Kalal*, 271 Wis. 2d 633, ¶ 51 (courts sometimes consult legislative history to confirm a plain-meaning interpretation of the statute). The drafting record shows that the word "adverse" was removed from the proposed statute by a senate amendment. The note accompanying the amendment states that it "cuts off the interest of the property owner and transfers the right to an easement to the utility after 10 years *even if the use by the utility were permissive*[,] e.g. if the utility had been paying rent" (emphasis added).

¶ 11. Admittedly, the title of WIS. STAT. § 893.28 is "Prescriptive rights by *adverse* user" (emphasis added). Nonetheless, this does not change our interpretation of § 893.28(2) for at least two reasons.

¶ 12. First, Wisconsin courts ordinarily follow the rule that, although statutory titles may assist in *resolving* ambiguity in statutory language, statutory titles cannot be used to *create* ambiguity in statutory language that is otherwise unambiguous. *See, e.g., State v. Black*, 188 Wis. 2d 639, 645, 526 N.W.2d 132 (1994) ("Consideration of a statutory title may be used only to resolve doubt as to the meaning of the statute.");

*Wisconsin Valley Improvement Co. v. PSC*, 9 Wis. 2d 606, 618, 101 N.W.2d 798 (1960) ("[T]itles may be resorted to in order to resolve a doubt as to statutory meaning . . . [but] should not be resorted to in order to create a doubt where none would otherwise exist."); *see also* Wis. Stat. § 990.001(6) ("titles to subchapters, sections, subsections, paragraphs and subdivisions of the statutes and history notes are not part of the statutes" for purposes of statutory construction).

¶ 13. Second, even if the title of Wis. Stat. § 893.28 could serve to create ambiguity in § 893.28(2), or if we otherwise deemed § 893.28(2) ambiguous, such ambiguity would be resolved against Williams by the legislative history referenced above.

¶ 14. Accordingly, we conclude that the construction and maintenance of electrical poles and transmission lines on Williams' property, under the Pole and Wire Agreement, constitutes "use of rights in real estate of another" under Wis. Stat. § 893.28(2).

¶ 15. Williams argues that this reading of Wis. Stat. § 893.28(2) is illogical and detrimental to public policy because a landowner permitting a utility to use rights in his or her property is left with only two options: demand that a utility remove equipment from the property before ten years elapses, or lose his or her property rights without compensation. Williams argues that forcing property owners to face this dilemma makes no sense and would cause area residents to lose phone and electrical service. We are not persuaded. The legislature has simply concluded that, if a utility has continuously used rights in property of another for at least ten years, then prescribing a right to continue that use is consistent with sound public policy. The legislature has apparently determined that, even if the statute deters some property owners from

granting utilities permissive use of their property, alternative options, including condemnation when available, are sufficient.[5]

¶ 16. Williams seems to be advancing the additional argument that, even accepting our interpretation of Wis. Stat. § 893.28(2), the statute does not or should not apply to his situation because American Transmission's use of his property began when the property was owned by a railroad. We reject this argument because § 893.28(2) does not make any distinction between a railroad landowner and any other landowner. On the contrary, the statute makes an exception only for certain government landowners as described in Wis. Stat. § 893.29. *See* § 893.28(2). Williams does not suggest that a railroad landowner falls within this exception.

¶ 17. Having concluded that American Transmission has a prescriptive right to continue its use of Williams' property, we turn to briefly address whether this conclusion necessarily precludes Williams' inverse condemnation claim against American Transmission. American Transmission argues that it does because such claims require that the defending party is occupying the claimant's property "without having the right to do so." *See* Wis. Stat. § 32.10. Williams does not develop any argument clearly addressing why, if American

---

[5] Williams does not develop, or even clearly raise, any argument that the statute results in an unconstitutional taking or interference with contract. At most, he suggests only in passing that American Transmission is seeking to take land without paying for it. Consequently, we have no occasion to address any constitutional challenge to Wis. Stat. § 893.28(2).

Transmission has a prescriptive right under WIS. STAT. § 893.28(2) to continue its use of his property, he should nonetheless be able to maintain his inverse condemnation claim. Accordingly, we take it as conceded that American Transmission's prescriptive right to continue its use of Williams' property under § 893.28(2) precludes Williams' inverse condemnation claim. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals may decline to review issues that are inadequately briefed).

### Conclusion

¶ 18. For the reasons stated, we reverse the circuit court's order that allowed Williams to proceed with his inverse condemnation claim against American Transmission and remand for the circuit court to conduct further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.