# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP2090 |

| | |
|---|---|
| COMPLETE TITLE: | Claudia B. Bauer , individually and Claudia B. Bauer , as Trustee of the Claudia B. Bauer Revocable Trust 2010 Restatement, Plaintiffs-Appellants-Petitioners, v. Wisconsin Energy Corporation d/b/a WE Energies, Defendant-Respondent, Dean Gatziolis , individually, Susan W. Gatziolis , individually, Engerman Contracting, Inc., Dean Gatziolis , as Trustee of the Gatziolis Family Trust and Susan W. Gatziolis , as Trustee of the Gatziolis Family Trust, Defendants. |

REVIEW OF DECISION OF THE COURT OF APPEALS
From an unpublished summary disposition issued
January 20, 2021

| | |
|---|---|
| OPINION FILED: | February 24, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 16, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Walworth |
| JUDGE: | Daniel Steven Johnson |

| | |
|---|---|
| JUSTICES: | |

KAROFSKY, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs filed by *Stephen E. Kravit, Leila N. Sahar, Gerald S. Kerska* and *Kravit, Hovel & Krawczyk, S.C.*, Milwaukee. There was an oral argument by *Stephen E. Kravit.*

For the defendant-respondent, there was a brief filed by *Miles W. Hartley* and *Guttormsen & Hartley, LLP*, Kenosha. There was an oral argument by *Miles W. Hartley*.

**2022 WI 11**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP2090
(L.C. No. 2016CV215)

STATE OF WISCONSIN      :      IN SUPREME COURT

**Claudia B. Bauer, individually and Claudia B. Bauer, as Trustee of the Claudia B. Bauer Revocable Trust 2010 Restatement,**

     **Plaintiffs-Appellants-Petitioners,**

  **v.**

**Wisconsin Energy Corporation d/b/a WE Energies,**

     **Defendant-Respondent,**

**Dean Gatziolis, individually, Susan W. Gatziolis, individually, Engerman Contracting, Inc., Dean Gatziolis, as Trustee of the Gatziolis Family Trust and Susan W. Gatziolis, as Trustee of the Gatziolis Family Trust,**

     **Defendants.**

**FILED**

**FEB 24, 2022**

Sheila T. Reiff
Clerk of Supreme Court

KAROFSKY, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 JILL J. KAROFSKY, J. Claudia Bauer seeks the removal of a natural-gas line first installed beneath her property over 41 years ago by a public utility with the permission of the

property's then-owner, Virginia Garside. We are asked whether Garside's grant of permission ripened into a prescriptive right under Wis. Stat. § 893.28(2) (2019-20),[1] allowing the public utility to continue using the line over Bauer's protests. We conclude that it did.

¶2 Under § 893.28(2), a public utility's continuous use of another's real property for at least 10 years establishes a prescriptive right to continue that use. This represents a marked change from the common-law requirements under which a party's use of another's real property became a prescriptive right upon: (1) an adverse use; (2) which is visible, open, and notorious; (3) under an open claim of right; and (4) continuous for twenty years. The parties agree that § 893.28(2) displaced the common-law adversity requirement and reduced the vesting period from 20 to ten years. They dispute whether that statute also abrogated the "visible, open, and notorious" and "under an open claim of right" requirements.

¶3 We conclude that the public utility here met the required continuous use for ten years prior to Bauer's purchase of the property, notwithstanding periodic repairs during that period. We further conclude that § 893.28(2) necessarily abrogated the claim-of-right requirement when it removed the adversity requirement. We do not reach, however, whether that

---

[1] This statute has remained unchanged in all relevant respects during the applicable time period and up through the current version of the Wisconsin Statutes. Therefore, all subsequent references to the Wisconsin Statutes are to the current 2019-20 version unless otherwise indicated.

statute still requires a visible, open, and notorious use because, regardless of the answer, Garside's actual knowledge of the gas line in this case would satisfy that requirement. Accordingly, under § 893.28(2) the public utility's prescriptive right to continue using the gas line vested prior to Bauer's purchase of the property, and her claims against the public utility were properly dismissed.

## I. BACKGROUND

¶4 In July 1980, beneath a property along Geneva Lake then owned by Virginia Garside, the Wisconsin Energy Corporation (WEC) installed a single half-inch diameter, plastic natural-gas pipe line.[2] WEC installed the line with Garside's written permission "to cross [her] property . . . to put a gas line into the [neighboring home]," now owned by the Gatziolis family. Of the roughly 285-foot line, 135.49 feet crosses underneath the Garside property.

¶5 WEC periodically serviced the gas line. Service records show that in 1984 WEC "relocated" the gas line "due to customer requests." "Relocation," WEC's representative averred, does not necessarily mean the line was moved but could also mean that a broken portion was replaced by splicing in a new piece of pipe. In 1988, WEC replaced 84 feet of the line by splicing new pipe of the same diameter and material into the existing line. In 1989, WEC again "relocated" the gas line "due to customer

---

[2] The gas line was installed by the Wisconsin Southern Gas Company, which later merged with the Wisconsin Natural Gas Company, which in turn merged with WEC. This opinion will simply refer to these companies collectively as WEC.

requests." Throughout each of these maintenance efforts, the line continued its existing gas service to the neighboring home.

¶6 In 1996, Claudia Bauer purchased the Garside property with no actual knowledge of the underground gas line's existence. She first learned of the line in 2014 when WEC contacted her about acquiring an easement to upgrade the gas line's diameter by a half-inch to better service the neighboring Gatziolises' planned home reconstruction. Bauer declined to grant the larger easement, which ultimately proved unnecessary after WEC determined that the existing line could adequately serve the Gatziolises' larger home.

¶7 Nevertheless, Bauer sued WEC as well as the Gatziolises and their contractor.[3] Relevant to this appeal, Bauer sought a declaration that WEC lacked an easement to continue operating the gas line under her property and brought trespass and ejectment claims against WEC.[4] WEC counterclaimed for its own declaration that it had obtained a prescriptive right to continue using the gas line pursuant to Wis. Stat. § 893.28(2). The circuit court agreed with WEC and granted it summary judgment, declaring that WEC had acquired a prescriptive

---

[3] Bauer also sued her title insurance company, who was later dismissed from the suit by stipulation of the parties.

[4] Bauer's claims against the Gatziolises and their contractor are not before this court.

4

easement[5] across Bauer's property under § 893.28(2) and dismissing the trespass and ejectment claims.[6]

¶8 Nearly eight months later, Bauer asked the circuit court to reconsider its summary-judgment decision. Her brief in support of reconsideration argued only that the circuit court's order failed to account for her previously unalleged constitutional rights to either just compensation for the taking of property or a court-made remedy to cure all alleged injuries or wrongs against her. Then, in her reply brief, Bauer raised for the first time an argument that summary judgment was inappropriate because, based on a "re-review" of WEC's summary-judgment submissions, there existed a genuine dispute regarding the effect of the 1984 and 1989 "relocations" and the 1988 pipe replacement on the continuousness of WEC's use of the gas line.

¶9 Ten days after filing her reply brief, on the eve of the reconsideration hearing, Bauer filed a declaration with two exhibits, both of which were photos that she maintained showed two separate gas lines at "two different," but unspecified, locations exposed when she excavated her property. She argued these images created an additional genuine dispute over the existence of two separate gas lines beneath her property. The circuit court denied Bauer's reconsideration motion, concluding

_____

[5] This opinion uses "prescriptive easement" and "prescriptive right" interchangeably. See, e.g., Garza v. Am. Transm. Co. LLC, 2017 WI 35, ¶23, 374 Wis. 2d 555, 893 N.W.2d 1 ("An easement grants a right to use another's land.").

[6] The Honorable Daniel Steven Johnson of the Walworth County Circuit Court presided.

that Bauer neither presented newly discovered evidence nor established any manifest error.

¶10 On appeal, the court of appeals summarily affirmed both the circuit court's grant of summary judgment in favor of WEC and its order denying Bauer's reconsideration motion. Bauer v. Wis. Energy Corp., 2019AP2090, unpublished order (Wis. Ct. App. Jan. 20, 2021). We granted Bauer's petition for review.

## II.  STANDARD OF REVIEW

¶11 This case requires that we review the appropriateness of summary judgment and reconsideration, which includes interpreting Wis. Stat. § 893.28(2). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Wis. Stat. § 802.08(2); see Stroede v. Soc'y Ins., 2021 WI 43, ¶9, 397 Wis. 2d 17, 959 N.W.2d 305. We review a summary-judgment decision de novo, using this same methodology. See Stroede, 397 Wis. 2d 17, ¶9. As for reconsideration, we review a circuit court's denial of reconsideration for an erroneous exercise of discretion, meaning that we affirm the circuit court's decision unless it "fails to examine the relevant facts, applies the wrong legal standard, or does not employ a demonstrated rational process to reach a reasonable conclusion." See Borreson v. Yunto, 2006 WI App 63, ¶6, 292 Wis. 2d 231, 713 N.W.2d 656. Finally, statutory interpretation presents a question of law that we review de novo. See Stroede, 397 Wis. 2d 17, ¶9.

6

### III. ANALYSIS

¶12 When reviewing summary judgment, we generally first define the applicable law and then decide if a genuine dispute exists as to any fact material to the law's application. But here, Bauer asked to expand the summary-judgment record via her motion to reconsider, so we must start there to define the appropriate scope of the record on review.

### A. Reconsideration

¶13 In our first review of the merits of a circuit court's reconsideration decision, we agree with the approach developed by the court of appeals. As that court has explained, a circuit court possesses inherent discretion to entertain motions to reconsider "nonfinal" pre-trial rulings.[7] See, e.g., Fritsche v. Ford Motor Credit Co., 171 Wis. 2d 280, 294-95, 491 N.W.2d 119 (Ct. App. 1992). To succeed, a reconsideration movant must either present "newly discovered evidence or establish a manifest error of law or fact." Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd., 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853 (citing Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000)).

¶14 Newly discovered evidence is not "new evidence that could have been introduced at the original summary judgment phase." Id., ¶46. Similarly, a "manifest error" must be more

---

[7] When Bauer moved for reconsideration, the summary-judgment ruling was not final as it lacked the required "THIS JUDGMENT IS FINAL FOR THE PURPOSES OF APPEAL" statement. See Wambolt v. W. Bend Mut. Ins. Co., 2007 WI 35, ¶44, 299 Wis. 2d 723, 728 N.W.2d 670.

7

than disappointment or umbrage with the ruling; it requires a heightened showing of "wholesale disregard, misapplication, or failure to recognize controlling precedent." Id., ¶44 (quoting Oto, 224 F.3d at 606). Simply stated, "a motion for reconsideration is not a vehicle for making new arguments or submitting new evidentiary materials [that could have been submitted earlier] after the court has decided a motion for summary judgment." Lynch v. Crossroads Counseling Ctr., Inc., 2004 WI App 114, ¶23, 275 Wis. 2d 171, 684 N.W.2d 141.

¶15 Yet Bauer's reconsideration motion did just that, according to the circuit court. Her motion raised three previously unalleged grounds. Two grounds were new constitutional claims. The third ground was a claimed factual dispute over WEC's continuous use of the gas line based on her "re-review" of the service records and the alleged newly discovered evidence—two photos of uncovered utility lines at "two different locations" on her property. The circuit court denied reconsideration, reasoning that:

- No manifest error existed as to the constitutional claims because Bauer had an imperfect-title remedy and lacked standing to raise a taking claim as the prescriptive right vested before she owned the property;

- Photos of additional pipe beneath the Bauer property were not newly discovered because the service records in the original summary-judgment record had always indicated that new piping was spliced into the original line to repair it, leaving the inactive pipe in the ground; and

8

- Even if they were newly discovered, the dispute they raised was immaterial as no evidence suggested that the additional piping was anything more than reasonable maintenance of a single gas line permitted under the original 1980 grant of permission.

¶16 We see no error in the circuit court's rationale that would justify reversal. Applying the law set forth above to the relevant facts before it, the circuit court reasonably concluded that Bauer lacked necessary factual predicates on both constitutional claims and offered no newly discovered evidence warranting reconsideration. See Borreson, 292 Wis. 2d 231, ¶6. Because the circuit court permissibly declined to accept additional evidence and legal arguments via Bauer's reconsideration motion, we disregard that material in reviewing the underlying summary-judgment decision.[8] See Clark v. League of Wis. Muns. Mut. Ins. Co., 2021 WI App 21, ¶19 n.8, 397 Wis. 2d 220, 959 N.W.2d 648.

B. Summary Judgment

¶17 We begin our review of summary judgment with the legal requirements to obtain a prescriptive easement, both at common law and as legislatively codified. We then assess whether any

---

[8] For this reason, Bauer's third issue presented regarding her constitutional right to a judge-made remedy under Article I, Section 9 of the Wisconsin Constitution is not properly before us. Even if it were, our conclusion that WEC acquired the prescriptive right prior to Bauer purchasing the property means that she never possessed the right she claimed was injured and that the "wrong" for which she seeks a remedy was committed not by WEC but by Garside, who conveyed imperfect title.

9

genuine disputes exist as to the facts material to WEC's claimed prescriptive right that would render summary judgment improper.

### 1. Prescriptive rights

¶18 At common law, a party acquired a prescriptive right in another's real property upon: (1) an adverse use hostile and inconsistent with the exercise of the titleholder's rights; (2) which was visible, open, and notorious; (3) under an open claim of right; and (4) was continuous and uninterrupted for twenty years. See, e.g., Ludke v. Egan, 87 Wis. 2d 221, 230, 274 N.W.2d 641 (1979). With respect to public utilities such as WEC,[9] the legislature supplanted the common law with Wis. Stat. § 893.28(2). See § 28, ch. 323, Laws of 1979. Under § 893.28(2), a public utility "establishes the prescriptive right to continue [its] use" of rights in another's real property upon "[c]ontinuous use of [those] rights . . . for at least 10 years."

¶19 Both the common law and § 893.28(2) require that the use be "continuous" for a set period. But the statutory text diverges from the common-law elements in three significant ways. First, the statute omits any mention of the use being "adverse" or "hostile and inconsistent with the exercise of the titleholder's rights." The parties agree the statute omits that

---

[9] Wisconsin Stat. § 893.28(2) applies to, in addition to certain utility cooperatives, all "domestic corporation[s] organized to furnish telegraph or telecommunications service or transmit heat, power or electric current to the public or for public purposes." There is no dispute that WEC is such a corporation, which also falls under the statutory definition of "public utility." See Wis. Stat. § 196.01(5).

language so as to allow permissive uses, such as licenses, to ripen into prescriptive rights.  See Williams v. Am. Transmission Co., LLC, 2007 WI App 246, ¶¶9-15, 306 Wis. 2d 181, 742 N.W.2d 882.  Second and also undisputed, the statutory vesting period is reduced from 20 to ten years.  Finally, § 893.28(2) contains no mention of the use being either "visible, open, and notorious" or "under an open claim of right."

¶20  The parties dispute the meaning of the legislature's omission.  WEC urges that the omission demonstrates legislative elimination of these two requirements.  Bauer counters that the legislature would need to be more "clear, unambiguous, and peremptory" than mere silence to abrogate those common-law requirements.  See, e.g., United Am., LLC v. DOT, 2021 WI 44, ¶15, 397 Wis. 2d 42, 959 N.W.2d 317.  Alternatively, WEC suggests that those two requirements are mere subparts of the "adversity" element, such that when the legislature eliminated the adversity element it simultaneously eliminated both "visible, open and notorious" and "under an open claim of right."  Bauer responds that these requirements are all conceptually distinct.

¶21 With respect to the claim-of-right requirement, context makes clear that § 893.28(2) necessarily abrogated it along with the adversity element.  As Bauer concedes, the legislature drafted § 893.28(2) to allow a permissive use to ripen into a prescriptive right.  See Williams, 306 Wis. 2d 181, ¶¶9-15.  But "an open claim of right" is the exact

11

opposite of a permissive use. See Ludke, 87 Wis. 2d at 231 (evidence of express permission rebuts the claim-of-right presumption). The legislature, then, necessarily had to remove both the adversity and claim-of-right requirements to allow a permissive use to ripen into a prescriptive right. This conclusion makes sense in light of the common view that a claim of right is a subpart of the larger adversity requirement. See, e.g., Simmons v. Berkeley Elec. Coop., Inc., 797 S.E.2d 387, 392 (S.C. 2016); 28A C.J.S. Easements § 43; John W. Bruce & James W. Ely, Jr., The Law of Easements & Licenses in Land § 5:8.

¶22 The same cannot be said about the visible, open, and notorious requirement. Such a use is not inherently inconsistent with a permissive license. That said, we need not and do not address whether § 893.28(2) still requires a visible, open, and notorious use because, as explained below, regardless of how we might answer that question our ultimate conclusion in this case remains the same. See, e.g., Md. Arms Ltd. P'ship v. Connell, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15.

2. WEC's claimed prescriptive right

¶23 We assume without deciding that Wis. Stat. § 893.28(2) still requires a public utility's use be visible, open, and notorious. Therefore, at issue here is whether WEC's use after the 1980 grant of permission was: (1) continuous for a period of ten years; and (2) visible, open and notorious. We conclude that WEC's use met both conditions prior to Bauer's purchase of the property.

12

¶24 A continuous use is one that is neither voluntarily abandoned by the party claiming a prescriptive right nor interrupted by an act of the landowner or a third party. See Red Star Yeast & Prods. Co. v. Merch. Corp., 4 Wis. 2d 327, 335, 90 N.W.2d 777 (1958); see also 25 Am. Jur. 2d Easements and Licenses § 51. Whether a use is abandoned or interrupted will "depend[] on the nature and the character of the right claimed." Shellow v. Hagen, 9 Wis. 2d 506, 512, 101 N.W.2d 694 (1960). A use remains continuous even when the user takes measures reasonably necessary to maintain or improve the use, so long as those measures are not inconsistent with the use's original nature and character nor more burdensome on the landowner. See Garza v. Am. Transm. Co. LLC, 2017 WI 35, ¶29, 374 Wis. 2d 555, 893 N.W.2d 1; Bino v. City of Hurley, 14 Wis. 2d 101, 106, 109 N.W.2d 544 (1961).

¶25 Here, the nature and character of WEC's claimed right is to provide gas service to a neighboring home via an underground plastic pipe. That use began in July 1980 and WEC contends it continued uninterrupted through July 1990, at which point it ripened into a prescriptive right. Bauer counters that a genuine dispute exists as to whether WEC's periodic repairs to the line disrupted its continuous use. According to Bauer, those repairs restarted the ten-year vesting period, so WEC's prescriptive right could not vest until after she purchased the property in 1996.

¶26 Bauer's argument misses the mark. The evidence reveals that WEC's replacement and "relocat[ion]" of the line

13

meant it repaired the line by splicing in a new piece of pipe to the original one. No evidence suggests that the character of the use——supplying gas along a single conduit——ever changed. Nor did these repairs increase the burden on the landowner; any land rendered unbuildable by the original line merely remained so. Accordingly, nothing in the record creates a genuine dispute that WEC's actions constituted anything other than reasonable maintenance on the line to continue its initial purpose. To the contrary, these activities manifest an ongoing desire to continue the use rather than interruption or voluntary abandonment.[10] As such, this record supports only one conclusion: WEC's use was continuous for ten years by July 1990.

¶27 That leaves the "visible, open, and notorious" requirement. A visible, open, and notorious use is one that would put a reasonably diligent landowner on notice of the use. See Kurz v. Miller, 89 Wis. 426, 433-34, 62 N.W. 182 (1895). The requirement's role is to give the landowner "knowledge and [an] opportunity to assert his or her rights." 25 Am. Jur. 2d Easements and Licenses § 42. Consistent with that objective, actual knowledge of the use satisfies this requirement. See Restatement (Third) of Property (Servitudes) § 2.17 (2000); 28A

---

[10] Moreover, if repairs disrupted a continuous use, then public utilities would face an unreasonable dilemma whereby honoring their legal obligations to repair and maintain a line could mean they risk altogether losing the right to continue servicing customers via that line. See Wis. Stat. §§ 182.0175(2m)(c) & 196.745(1)(a); Wis. Admin. Code § PSC 135.012 (December 2018).

14

C.J.S. Easements § 33; Bruce & Ely, Jr., supra § 5:13. Bauer does not dispute her predecessor's actual knowledge of WEC's use, evidenced by the written permission Garside granted WEC. So, here too, the record permits one conclusion: WEC's use was visible, open, and notorious to Garside.

¶28 Absent a genuine dispute over WEC's continuous use from July 1980 through July 1990 or Garside's actual knowledge of that use, we conclude that summary judgment is appropriate. We therefore affirm the circuit court's declaration that WEC acquired a prescriptive right across the Garside property to deliver natural gas to the neighboring home before Bauer owned the property. And because Bauer purchased the property subject to WEC's vested right, we further affirm the dismissal of her trespass and ejectment claims against WEC.

## IV. CONCLUSION

¶29 We affirm both the circuit court's grant of summary judgment in WEC's favor and its denial of reconsideration.

*By the Court.*——The decision of the court of appeals is affirmed.

15