COURT OF APPEALS
DECISION
DATED AND FILED

September 14, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1751**

STATE OF WISCONSIN

Cir. Ct. No. **2018CV3122**

IN COURT OF APPEALS
DISTRICT IV

LEONARD POZNER,

PLAINTIFF-RESPONDENT,

V.

JAMES FETZER,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. § 809.23(3).**

¶1 PER CURIAM. James Fetzer, pro se, challenges the circuit court's grant of Leonard Pozner's motion for a turnover of Fetzer's personal property to

satisfy a portion of a judgment that Pozner obtained against Fetzer in a defamation action.[1] Fetzer specifically appeals the court's denial of a reconsideration motion that he filed objecting to the turnover order. In opposing Pozner's turnover motion, Fetzer argued that he does not own the property at issue, the property is not subject to execution, and the turnover motion is an improper vehicle given Pozner's "goals" for the property. In the reconsideration motion, Fetzer argued that the circuit court should have: appointed a receiver instead of, or perhaps in conjunction with, a turnover order; determined that Pozner is judicially estopped from obtaining a turnover order; or determined that Pozner's motion sought an abuse of process. We affirm.

## BACKGROUND

¶2    Some pertinent context is reflected in ***Pozner v. Fetzer***, Nos. 2020AP121, 2020AP1570, unpublished slip op. (WI App March 18, 2021) ("***Pozner I***"), but it is not necessary to repeat much of that here.

¶3    In brief, Pozner pursued a defamation claim against Fetzer in 2018 and this resulted in a jury award of $450,000. ***Id.***, ¶¶1, 6. The defamation claim is based on statements that Fetzer published on the internet concerning a copy of a death certificate for Pozner's son—who was killed in the 2012 mass shooting at Sandy Hook Elementary School in Connecticut—asserting that the death certificate is a "fabrication." ***Id.***, ¶¶1, 4. After the circuit court granted partial

---

[1] A judgment creditor typically must take steps in order to enforce a judgment with regard to a judgment debtor's tangible or intangible personal property. ***Associated Bank N.A. v. Collier***, 2014 WI 62, ¶23, 355 Wis. 2d 343, 852 N.W.2d 443 (citing Robert A. Pasch, 12 WISCONSIN PRACTICE SERIES: WISCONSIN COLLECTION LAW § 14:1, at 286 (2d ed. 2006)). "Execution, garnishment and turnover orders applying property in satisfaction of a judgment are all methods of levying the judgment debtor's personal property." ***Id.***

2

summary judgment to Pozner, determining that Fetzer's statements are defamatory, damages were tried to a jury. *Id.*, ¶1. We affirmed the circuit court's rulings that Fetzer's statements are defamatory and that his motions for a new trial should not be granted. *Id.*, ¶2.[2]

¶4 In March 2020, as part of Pozner's attempts to satisfy the judgment, his counsel conducted a joint supplemental examination of Fetzer and his spouse, pursuant to WIS. STAT. ch. 816 ("Remedies Supplementary to Execution") (2021-22).[3] One topic of the supplemental proceedings involved books written in whole or part by Fetzer and any associated royalties and copyrights.

¶5 In April 2022, as part of Pozner's continuing efforts to satisfy the judgment, he filed with the circuit court the focus of this appeal: a motion for a turnover of property as a judgment creditor. Pozner identified four editions of a book, "Nobody Died at Sandy Hook," and four website domains, all associated with Fetzer. An affidavit filed by Pozner's counsel avers that these are works not exempt from execution that "may be applied to satisfy" the judgment. *See* WIS. STAT. § 816.08 ("Property to be applied to judgment").

¶6 In opposing the turnover motion, Fetzer argued that: Fetzer "does not own the property that [Pozner] requests he turn over"; the intellectual property

---

[2] Our rulings in *Pozner I* affirming both the circuit court's partial summary judgment decision and its denial of Fetzer's motions for a new trial are now law of the case and we ignore various attempts Fetzer makes in this appeal to relitigate those issues. *See Laatsch v. Derzon*, 2018 WI App 10, ¶40, 380 Wis. 2d 108, 908 N.W.2d 471 ("[A] decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal." (alteration in *Laatsch*)).

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

at issue "is not subject to execution"; and Pozner's turnover motion "is an improper legal mechanism to achieve" Pozner's "goals."

¶7      Pozner responded with arguments that:  Fetzer owns the copyrights to the books under federal law; "[m]odern federal law does not exempt" Fetzer's copyrights from execution; the copyrights are intangible personal property subject to execution; the books have value; and, even if Fetzer does not own the website domain names, Fetzer should "be ordered to turn over his ownership in the copyrights to all" content.  Pozner argued in the alternative that, if the circuit court were to determine that someone other than Fetzer "has an adverse interest in the [b]ooks," the court could consider "appoint[ing] a supplemental receiver over the [b]ooks to liquidate the property."

¶8      At a hearing in June 2022, the circuit court explained that it had read the parties' briefing carefully and that it planned to rule on the motion from the bench.  Fetzer, then represented by counsel, did not object to this approach.

¶9      The circuit court asked counsel for Pozner the following question:  If the turnover motion were granted, what offset or credit should Fetzer receive against the outstanding balance of the judgment?  Counsel responded that, based on Fetzer's testimony that he had received $25,000 in royalties from sales of one edition of the book, that amount should be multiplied by the four editions, for a total offset of $100,000.[4]

---

[4] Pozner's counsel gave no specific estimate for the value of the website domains, but later in the hearing said, "We think that there's at least some value associated with" blog entries on the website domains.  A reasonable interpretation of counsel's remarks as a whole is that $100,000 was a high-end estimate for the value of the four book editions and that any separate monetary value in the domains could be considered covered by that total.

¶10    Fetzer declined to stipulate to a valuation of $100,000. At a later point in the hearing, Fetzer at least briefly took the position that "there is no value in any of these assets," but this position was confusingly and inconsistently presented at the hearing. At the same time, however, this assertion was consistent with at least one statement in Fetzer's pre-hearing filing: that Pozner "attempts to gain control of valueless assets."[5]

¶11    The circuit court rejected Fetzer's argument that he does not own the property sought by Pozner to satisfy the judgment, for two reasons. First, the court appeared to accept Pozner's argument that, under federal copyright law, a copyright "resides in the person who compiled [a] collective work," which defeats Fetzer's suggestion that he lacked an ownership interest in the books because its multiple editions had multiple contributors, in light of the uncontested fact that Fetzer was the compiler. Second, the court analogized the situation to one in which a purported or partial owner of real estate uses a quit claim deed to transfer to a second individual any and all interest the first individual has in the real estate, without anyone purporting to establish the extent of the first individual's transferred ownership rights. *See* WIS. STAT. § 706.10(4) ("A quitclaim deed shall pass all of the interest in or appurtenant to the land described which the grantor could lawfully convey, but shall not warrant or imply the existence, quantity or quality of any such interest."). The court's reasoning was that it did not matter what degree of ownership interest Fetzer had or did not have in this property, because the turnover order would merely permit Pozner to take whatever

---

[5] Counsel for Fetzer made an additional suggestion at this hearing that Fetzer is entitled to a statutory exemption from execution related to "business and farm property," *see* WIS. STAT. § 815.18(3)(b), but counsel did not develop or pursue the point, and in any case on appeal Fetzer now disclaims any exemption argument. We discuss this topic no further.

5

ownership interest Fetzer had—formally valued at $100,000, but perhaps having an actual value somewhat or a great deal less than that—with Fetzer being no worse off if it were of little or no value.

¶12    At one point during the hearing, counsel for Fetzer said that "this may be a set of circumstances" in which "appointment of a receiver would be appropriate to untangle some of the valuation and specifics of the property behind this and other owners."  Consistent with the alternative proposal contained in Pozner's pre-hearing briefing, counsel for Pozner said that if the circuit court wanted to appoint a receiver "to satisfy the judgment through a sale," then Pozner "can certainly file a motion" for appointment of a receiver.  The court ruled at the end of the hearing that, "under the circumstances [and] considering the equities and the position of the parties[,]" it is not "appropriate to appoint a receiver." "[T]he expenditure and additional financial resources in this case at this time under these circumstances do not warrant it."

¶13    Focusing on what Pozner might do with the property following turnover, counsel for Fetzer said, "I can't imagine that [Pozner] would ever … voluntarily allow the sale of" the books, because Pozner's position throughout the case to that point had been that statements in the books are defamatory to Pozner. In response, the circuit court questioned whether it could matter for purposes of a turnover hearing what the motive of a judgment creditor is in seeking turnover. The court said, "The question is, is the property … subject to seizure or attachment, and what is it worth?  [How] would the motive [of the creditor] be relevant?"  Counsel did not respond with specific authority.  Instead, counsel made the following broad assertion:  "I believe it's just relevant from … a policy perspective and legislative intent in writing [WIS. STAT.] Chapters 815 and 816 …

[that the intent] is to [allow] collect[ion of] money for a judgment, not" to allow "some other motive or even a nefarious motive."

¶14 The circuit court further ruled that, given Fetzer's apparent decision not to stipulate to the $100,000 valuation by Pozner, Fetzer had a right to challenge that valuation. *See* WIS. STAT. § 815.18(7) (addressing enforcement of judgments by execution and stating, "The value of any property subject to exemption under this section shall be determined by agreement of the parties or by a commercially reasonable manner."). The court said that if a commercially reasonable appraisal were to determine that the property has no value—as Fetzer at least at times asserted—"then Mr. Pozner will still have the asset[s], but the setoff will be zero, or a dollar, a nominal value."

¶15 The circuit court granted the turnover motion, "effective immediately," "after careful consideration of the written material" and of the arguments made by counsel at the June 24 hearing. The court said that it was "satisfied that there is a factual basis to support" Pozner's assertion that Fetzer "has some ownership interest in all the assets that are seized of some kind to some degree." Repeating its quit-claim analogy, the court said that its ruling establishes that Pozner "now stands in the shoes of [Fetzer] and that [Pozner] possesses all the rights, title and interest in the property to whatever degree they exist [and] were formerly possessed by" Fetzer.

¶16     The circuit court set a schedule for the parties to submit positions on the primary remaining issue: valuation.[6] The court gave Fetzer 10 days to notify the court in writing whether he accepted Pozner's valuation of $100,000. If not, then Fetzer would have 60 days beyond that to submit "an evidentiary basis, namely, an appraisal by an expert, as to what [Fetzer] believes the property is worth," followed by Pozner's additional submissions on the valuation topic. Anticipating that it would receive appraisals from the parties, the court planned to issue a written decision or else schedule a "separate hearing on the valuation."

¶17     On July 5, 2022, Fetzer, now representing himself, submitted a letter to the circuit court stating that he contested Pozner's $100,000 valuation and that he planned to submit an expert's appraisal of the value of the property. As referenced below, Fetzer never submitted such an appraisal to the court.

¶18     On July 8, 2022, the circuit court confirmed its oral ruling with a written order granting Pozner's motion for turnover, stating that, "[e]ffective as of June 24, 2022," Pozner's "interest in the copyright and title of" the books and website domain content "is transferred to" Pozner. The order further set forth,

---

[6] The court said at the June 24 hearing that it would reserve for later decision whether "the setoff doesn't apply as a matter of law." As best we can discern this was a reference to the following argument in the pre-hearing filing by Fetzer: "[T]he Wisconsin Legislature did not contemplate the satisfaction of money judgments with anything other than either money or a 'payment intangible,'" citing *Attorney's Title Guaranty Fund v. Town Bank*, 2014 WI 63, 355 Wis. 2d 229, 850 N.W.2d 28. But, as discussed below, the court never explicitly returned to this issue.

consistent with the court's statements at the hearing, the schedule for the parties to make submissions to resolve the valuation issue.[7]

¶19     On July 13, 2022, Fetzer, still representing himself, submitted to the circuit court a document styled "Fetzer's Motion for Reconsideration, Vacation & Objection to Pozner's Valuation of Property, & Damages for Abuse of Process," which we will refer to as "the reconsideration motion."  The reconsideration motion contained the following arguments:  Pozner is judicially estopped from claiming that the books have any value to Pozner because Pozner "cannot now claim" that Pozner will sell copies of the books that contain "material adjudged defamatory to [Pozner] and the public memory of his son"; Pozner is also judicially estopped from claiming that the website domain names have any value to Pozner because Pozner has demonstrated that "his whole purpose is to remove them from the public"; it would be "abuse of process" to allow Pozner to "take worthless property to satisfy a money judgment" with the "ulterior motive" of preventing anyone from publishing them.  The reconsideration and valuation motion requested as relief that the court:  reconsider and vacate the turnover order; set the value of the property at zero; and "[f]ind all elements of an abuse of

---

[7] This order states that it "is a final order for purposes of appeal," but this is not accurate. It left unresolved the issues identified by the court:  valuation of the property and Fetzer's argument that the setoff does not apply as a matter of law. *See* WIS. STAT. § 808.03(1) (a final judgment or order "disposes of the entire matter in litigation as to one or more of the parties"). The final judgment in this appeal was issued August 29, based on reasoning of the circuit court explained at a hearing on August 17, as summarized in the text below.  Under the rules that define the content of appeals, Fetzer's appeal from the August 29 order "brings before [this] court all prior nonfinal judgments, orders and rulings adverse to [Fetzer] and favorable" to Pozner in the case that were not previously appealed and ruled upon, including the rulings memorialized in the July 8 order. *See* WIS. STAT. RULE § 809.10(4).

process" and "fine" Pozner the amount of Fetzer's legal fees in connection with the collection litigation.[8]

¶20     Pozner opposed the reconsideration motion, arguing in part that Fetzer had failed to meet his burden to prevail on a motion to reconsider the turnover order. *See **Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.**,* 2004 WI App 129, ¶44, 275 Wis. 2d 397, 685 N.W.2d 853 (a party moving for reconsideration must present either "newly discovered evidence or establish a manifest error of law or fact").

¶21     On August 17, 2022, the circuit court held a hearing on the reconsideration motion and the valuation of the property. The court denied the reconsideration motion, on the grounds that Fetzer failed to meet either of the ***Koepsell's*** requirements.

¶22     Turning to the valuation issue, the circuit court noted that Pozner had failed to submit an appraisal of the value of the property, despite the court's invitation to do so. The court accepted Pozner's submission of $100,000 as the value to assign for purposes of partial satisfaction of the judgment against Fetzer. The Court concluded that this would be "substantially higher than the fair market value" of the property, but that this is not a problem because setting the value at $100,000 provides Fetzer with a benefit in the reduction of the outstanding amount owed on the judgment, which Fetzer could not reasonably complain about.

---

[8] Fetzer also filed a motion to stay the turnover order pending U.S. Supreme Court consideration of a petition for certiorari review, but that motion was denied by the circuit court, and neither side bases an argument on that motion or its denial.

¶23     The circuit court memorialized these rulings in an order dated August 29, 2022.

## DISCUSSION

¶24     Fetzer makes four arguments on appeal in challenging both the results of the June 24 hearing and the denial of his motion for reconsideration. First, he renews his argument that his intangible interest in the property cannot legally set off any part of the judgment. Second, the circuit court should have appointed a receiver instead of, or in conjunction with, granting the turnover order. Third, Pozner is judicially estopped from obtaining a turnover order. Fourth, Pozner's turnover motion constitutes, or perhaps improperly resembles, the tort of abuse of process. Notably, Fetzer does not now challenge the primary issue that the court addressed and resolved at the August 17 hearing, namely, the value of the property that the court had ordered turned over at the June 24 hearing.

¶25     Before addressing the four issues in turn, we note the following with regard to our review of the circuit court's denial of the reconsideration motion, which is pertinent across issues. Our supreme court has recently summarized pertinent legal standards, in part citing *Koepsell's*:

> [A] circuit court possesses inherent discretion to entertain motions to reconsider "nonfinal" pre-trial rulings. To succeed, a reconsideration movant must either present "newly discovered evidence or establish a manifest error of law or fact."
>
> Newly discovered evidence is not "new evidence that could have been introduced at the original summary judgment phase." Similarly, a "manifest error" must be more than disappointment or umbrage with the ruling; it requires a heightened showing of "wholesale disregard, misapplication, or failure to recognize controlling precedent." Simply stated, "a motion for reconsideration is not a vehicle for making new arguments or submitting new

11

> evidentiary materials [that could have been submitted earlier] after the court has decided a motion for summary judgment."

***Bauer v. Wisconsin Energy Corp.***, 2022 WI 11, ¶¶13-14, 400 Wis. 2d 592, 970 N.W.2d 243 (footnote and quoted authority omitted).[9]

## I. INTANGIBLE PROPERTY TO SET OFF JUDGMENT

¶26     Neither at the August 17 hearing nor in its final order did the circuit court explicitly address the topic that it had said at the June 24 hearing it would be reserving for later decision: whether "the setoff doesn't apply as a matter of law" under ***Attorney's Title Guaranty Fund v. Town Bank***, 2014 WI 63, 355 Wis. 2d 229, 850 N.W.2d 28. *See supra* n.6. As we now briefly explain, however, Fetzer's argument on appeal based on ***Attorney's Title Guaranty Fund*** is undeveloped.

¶27     Our supreme court in ***Attorney's Title Guaranty Fund*** decided that a debtor lawfully assigned potential proceeds from a legal claim of the debtor as collateral for a contemporaneously incurred debt to a corporation. ***Id.***, ¶4. The court also decided that the corporation was entitled to the proceeds of the debtor's legal claim because, at the moment when the debtor acquired the proceeds from

---

[9] While Pozner's motion for turnover granted by the circuit court at the June 24 hearing was not technically framed as a motion for summary judgment, Fetzer does not dispute that the procedural posture of the turnover motion and the way in which it was addressed by the parties and the circuit court, both before and after June 24, render applicable here the reasoning in ***Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.***, 2004 WI App 129, 275 Wis. 2d 397, 685 N.W.2d 853, and ***Bauer v. Wisconsin Energy Corp.***, 2022 WI 11, 400 Wis. 2d 592, 970 N.W.2d 243. This is what Pozner has consistently argued in the circuit court and now on appeal, without objection by Fetzer, which concedes the point. *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

his claim, the corporation's interest became superior to that of other creditors, including a bank that had not yet levied the proceeds. *Id.* The supreme court had occasion to distinguish between a legal "claim from which proceeds arise," which involves litigation choices and actions, and "the proceeds themselves," which amount to a "payment intangible," in other words, "simply the right to be paid." *Id.*, ¶23. The analogy Fetzer makes is that there is a distinction between intellectual property (here, the books and website domains) and the proceeds arising from that property (the right to be paid based on ownership of them). Fetzer has identified a facially plausible analogy to one reference made by our supreme court in an entirely different context. But he fails to attach that analogy to a developed legal argument based on any Wisconsin statute or case law showing that the circuit court erroneously exercised its discretion under the circumstances the court was presented with at the June 24 hearing. To say more on this issue would be to develop it beyond any supported argument offered by Fetzer.

## II. DECISION NOT TO APPOINT RECEIVER

¶28    Fetzer now identifies the following as one of his arguments: "Pozner cannot lawfully take Fetzer's intangible intellectual property directly without assignment of rights and appointment of a receiver to manage or sell the properties."[10]  As he puts it at one point, "there must be an intermediary to perform

---

[10] Fetzer is not clear about whether his argument is that the circuit court should have appointed a receiver *in lieu of* ordering the requested turnover or instead that the court should have appointed a receiver *in conjunction with or as a supplement to* a turnover order. At times he suggests an argument that the court should have appointed a receiver for the purpose of property valuation, but without being clear as to whether in his view the court could have determined that a turnover is appropriate before appointing a receiver. In any case, in Fetzer's favor, we assume without deciding that he relies on both theories, but as the discussion in the text reflects it makes no difference what his precise theory might be.

(continued)

the conversion of [the property at issue] to money and given to the judgment creditor." We construe this to be an argument that the circuit court was obligated to appoint a receiver in lieu of or in conjunction with granting a turnover order. We reject this argument because Fetzer's position has shifted dramatically over time and because he fails to show that the court erroneously exercised its discretion in deciding not to appoint a receiver based on the available information and arguments of the parties when it made the decision. Further, we conclude that he fails to show that the court should have reversed itself based on his motion for reconsideration.

¶29     Under WIS. STAT. § 813.16, a circuit court "may" appoint a receiver under the following potentially pertinent circumstances:

> (1) On the application of either party, when the applying party establishes an apparent right to or interest in property which is the subject of the action and which is in the possession of an adverse party, and the property or its rents and profits are in danger of being lost or materially impaired.

---

More generally, over the course of nearly 11 pages of briefing purportedly devoted to the first issue, Fetzer makes many assertions and possibly intended arguments, some but not all of which appear to reference the receiver issue that we identify in the text. Nearly four of those pages are simply cut-and-paste passages from Fetzer's written response to the motion for turnover, which was filed before the June 24 hearing at which the circuit court specifically addressed the receiver issue. We do not discern a developed argument in this section of Fetzer's briefing other than the issue that we address in the text, assuming without deciding that it is properly developed. Fetzer otherwise fails to develop coherent, supported arguments that fit the circumstances here. "A party must do more than simply toss a bunch of concepts into the air with the hope that either the trial court or the opposing party will arrange them into viable and fact-supported legal theories." *State v. Jackson*, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999); *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (this court need not attempt to develop for a party undeveloped legal arguments). We make some allowances for the shortcomings of pro se parties, but "[w]e cannot serve as both advocate and judge," *Pettit*, 171 Wis. 2d at 647, and we will not scour the record to attempt to discover viable, fact-supported legal theories that could support a party's position, *see Jackson*, 229 Wis. 2d at 337.

(2) By the judgment, or after judgment, to carry it into effect or to dispose of the property according to the judgment.

¶30 Further, WIS. STAT. § 816.04 specifically grants circuit courts discretionary authority to appoint a receiver to help a creditor satisfy a judgment. As we have explained:

> The receiver acts as a collection agent for the specific judgment creditor he or she represents. "A receiver in aid of execution is authorized to collect those assets revealed by the examination of the debtor, take possession of them, apply them to the satisfaction of the judgment, and return the excess to the judgment debtor." Whether to appoint a receiver is discretionary. Our review of a trial court's discretionary decision is highly deferential. We search the record for reasons to sustain the trial court's decision.

*Dawson v. Goldammer*, 2006 WI App 158, ¶34, 295 Wis. 2d 728, 722 N.W.2d 106 (cited authority omitted).

¶31 In his briefing before the June 24 hearing, Fetzer did not apply for a receiver, as an alternative to or in conjunction with a turnover order, as he could have done under WIS. STAT. § 813.16. Further, his briefing on the issue was ambivalent. He referred several times to the option of a receiver but never affirmatively argued that the circuit court had to appoint a receiver in lieu of or in conjunction with ordering turnover. Then, at the hearing, counsel for Fetzer made a qualified suggestion that the court consider an appointment: "I think this may be a set of circumstances where appointment of a receiver would be appropriate to untangle some of the valuation and specifics of the property behind this and other owners, given the circumstances." Throughout the rest of the hearing counsel did not follow up on this qualified suggestion. After Pozner expressed openness to a receiver appointment, consistent with his alternative pre-hearing position, the court explained its ruling: under all of the circumstances, devoting further

15

resources in this extensive litigation to the hiring of a receiver to assist in resolving the books-and-domains turnover issue was not justified.

¶32 The qualified suggestion by Fetzer at the June 24 hearing that a receiver could be helpful to "untangle some of the valuation and specifics of the property" does not resemble his current, categorical argument that appointment of a receiver was necessary in lieu of or in conjunction with a turnover. This is fatal to the argument because Fetzer forfeits review of a right that he did not claim in the circuit court. *See State v. Ndina*, 2009 WI 21, ¶¶29-30, 315 Wis. 2d 653, 761 N.W.2d 612 (forfeiture rule allows circuit courts to avoid or correct errors with minimal disruption; gives parties and the circuit court notice of the issue and a fair opportunity to address the objection, to diligently prepare for and conduct trials; and prevents attorneys from "sandbagging" opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal); *Townsend v. Massey*, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155 ("the forfeiture rule focuses on whether particular arguments have been preserved, not on whether general issues were raised before the circuit court").

¶33 Further, on the merits, Fetzer does not now develop an argument that it was an erroneous exercise of discretion for the circuit court to decide at the June 24 hearing that the appointment of a receiver was not called for in light of the relevant circumstances, in the face of mild suggestions that the court might considering doing so. Fetzer fails to acknowledge the discretionary nature of the decision. He relies heavily on selective quotations from passages in a law journal article, but the whimsically written article does not reference a single Wisconsin court case or statute, and does not, so far as we can discern, purport to address the specific issues presented here based on the current law of any jurisdiction.

16

¶34    Fetzer now suggests that the circuit court was obligated to appoint a receiver in lieu of or in conjunction with ordering turnover, because this would have allowed the receiver to confirm a position that Fetzer took in the circuit court, at least at times: that the property has no value. As Pozner points out, however, one significant problem with this argument is that the court invited Fetzer to offer evidence of the value (or lack of value) of the property, which Fetzer declined. Fetzer fails to explain how the court erroneously exercised its discretion in settling on the $100,000 value, which was supported by evidence, instead of appointing a receiver for the purpose of property valuation.

¶35    Turning to the circuit court's denial of the motion for reconsideration, Fetzer fails now to identify newly discovered evidence that he presented to the circuit court and, for the same reasons we have just given, he does not establish a manifest error of law or fact on this issue. In addition, while Fetzer makes various references to the proposition that intellectual property cannot be subject to a turnover under Wisconsin law, none of these references establish a manifest error of law or fact.

### III.  JUDICIAL ESTOPPEL

¶36    Fetzer argues that "Pozner is judicially estopped from reducing the money judgment debt with the taking order's intangible property."

¶37    There is no mention whatsoever of estoppel in the briefing Fetzer submitted before the June 24 hearing and also no mention of it at the hearing itself. Therefore, this was an entirely new argument in the reconsideration motion and properly rejected by the circuit court on that basis. *See* ***Bauer***, 400 Wis. 2d 592, ¶14.

¶38    Further, the argument is undeveloped on its merits.  Fetzer fails to develop an argument, supported by legal authority, that the circuit court could not properly issue the turnover order because Pozner might be inclined to derive little or no revenue from the property.

## IV.  ABUSE OF PROCESS

¶39    Fetzer now identifies the following as his final argument:  "The Taking Order Procedure was an abuse of process to take property in a fashion not intended by law with an ulterior motive to prevent a 400+ page book from being circulated merely because [the circuit court] found 3 sentences of it to be libelous."

¶40    As with the estoppel argument, there is no mention whatsoever of abuse of process in the briefing Fetzer submitted before the June 24 hearing and also no mention of it at the hearing itself.  *See id.*

¶41    Further, the argument on appeal is undeveloped on its merits.  It is sufficient to observe that Fetzer fails to develop an argument, supported by legal authority, that the circuit court should have overlaid the tort of abuse of process on top of Wisconsin collection law to determine that a turnover order would allow Pozner to misuse the property in a manner inconsistent with Wisconsin collection law.  Fetzer's briefing contains assertions and possibly intended arguments that appear not to bear directly on any of the issues addressed in this opinion.  We deem any additional purported arguments to be undeveloped.  *See State v. Jackson*, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999); *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

## CONCLUSION

¶42     For all these reasons, we affirm the circuit court's final order, dated August 29, 2022, and reject Fetzer's challenge to the order of July 8, 2022.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.